## Levin et al. *v.* Philadelphia, Appellant.

*Landlord and tenant — Defects in premises — Duty to repair — Duty to sub-lessee—Duty to stranger—Designation of premises— Lease of pier—"Freight"—Words and phrases—Licensee or bailee.*

1. As between landlord and tenant, in absence of express covenant in lease, no implied covenant exists on part of landlord either to put the premises in repair or to keep them so, or that the premises are in a tenantable condition, and the tenant takes the property subject to all existing defects which can be ascertained by reasonable inspection; this rule applies even where a defect causing injury is in the construction of the building.

2. If the landlord has information of a defect likely to cause injury and such defect is one the tenant cannot discover by reasonable inspection, the landlord is bound to disclose it.

3. So far as third persons are concerned the landlord is liable for defects existing at the time of the execution of the lease, and he cannot relieve himself from liability to others by placing a tenant in possession of the defective property.

4. A lease contemplates the passing of the right to possess a particular piece of property to the exclusion of others.

5. If a person contracts with a tenant for the storage of goods on a designated part of the demised premises, he becomes a sub-lessee, and his rights rise no higher than those of the tenant.

6. If he merely contracts for the right to store goods generally with others without any space being designated, he is merely a licensee or bailee, and the landlord may be liable to him for defects existing at the time of the execution of the lease.

7. If an owner of a pier leases it to a transportation company for "storage of freight" and for no other purpose without consent of the lessor, and the lessee for a consideration permits a third person to use the pier for general storage purposes, the lessor is not liable to such third person for the injury caused by a defect in existence when the lease was executed.

8. In such case the words "storage of freight" means freight in course of transportation and temporarily stored in the ordinary course of transit in connection with the business carried on by the lessee.

Argued March 7, 1923. Appeal, No. 48, Jan. T., 1923, by defendant, from judgment of C. P. No. 4, Phila. Co., March T., 1921, No. 7132, on verdict for plaintiff, in case of Alan Levin et al., trading as S. H. Levin's Sons v. City of Philadelphia, Trustees under will of Stephen Girard, deceased. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Reversed.

Trespass for injuries to goods. Before McCULLEN, J.

The opinion of the Supreme Court states the facts.

Verdict and judgment for plaintiff for $6,702.92. Defendant appealed.

*Error assigned,* inter alia, was (12) refusal of defendants 9th point, quoting point and answer.

*Hazleton Mirkil, Jr.,* and *Francis E. Brewster,* for appellant.—The owner of a bulkhead is not liable for damages suffered by a subtenant under circumstances such as existed in this case: Robinson v. Heverin, 50 Pa. Su-

perior Ct. 546; Sessa v. Rozzi, 68 Pa. Superior Ct. 593; McKenna v. Paper Co.,176 Pa. 306; Folkman v. Lauer, 244 Pa. 605.

*Otto Wolff, Jr.,* with him *Lewis, Adler & Laws,* for appellees.—If the bulkhead, when the same was leased to the Trenton & Phila. Motor Freight Co., was so unsafe and dangerous to persons and property lawfully upon the same, by reason of appellant's failure and neglect to keep the same in proper repair and in a safe condition, so as to constitute a nuisance, appellant was responsible for the consequences of its neglect, and did not escape liability by leasing the property to a tenant and putting him in possession: Towt v. Phila., 173 Pa. 314; Fow v. Roberts, 108 Pa. 489; Wunder v. McLean, 134 Pa. 334; Folkman v. Lauer, 244 Pa. 605.

Appellant's liability arises out of the fact that the bulkhead in question was an existing nuisance.

OPINION BY MR. JUSTICE FRAZER, May 23, 1923:

Defendant, as trustee for the Girard Estate, owned piers Nos. 1 and 2 North Wharves, Philadelphia, which had, for many years, been leased to the Clyde Steamship Company. In 1904 the city and the steamship company jointly constructed a bulkhead on piling between the two piers, which the company continued to occupy until September 30, 1919, at which time its tenancy ceased and the premises were surrendered to defendant. On November 5, 1919, the bulkhead in question, through William H. Vivian, acting as agent for the Girard Estate, was leased to the Trenton & Philadelphia Motor Freight Company, a corporation engaged in transporting local freight between the Cities of Philadelphia and Trenton for "storage of freight" and no other purpose "without the consent in writing of the said lessor." Possession was first taken under a verbal agreement, but, on November 24, 1919, a written lease was signed by the tenant and forwarded to defendant for execution. It was approved by

defendant's real estate committee December 5th, for a term of twenty-six days from November 5, 1919, renewable monthly, and rent payable monthly in advance. The parties thus treated the original possession of the tenant as having been taken under the lease, though subsequently executed, and not, in fact, delivered to the lessee until December 29, 1919, and the trial judge admitted the written agreement as governing the terms of the original tenancy.   On November 24, 1919, plaintiffs, who were importers and dealers in salt-fish and canned goods, with a place of business near the piers in question, applied to Vivian for the lease of space for storing mackerel and were referred by him to the Trenton & Philadelphia Motor Freight Company, who had rented the bulkhead.   Pursuant to arrangements made at this suggestion, plaintiffs proceeded to place 792 barrels of mackerel on the bulkhead.   Nothing definite was agreed upon as to the terms of such storage, nor the space to be occupied, a merely tentative arrangement being made whereby plaintiffs were to pay either twelve cents a barrel for storage and three cents a barrel for tierage, or an amount to be agreed upon per square foot for space.   On December 4, 1919, the bulkhead collapsed, precipitating the barrels of fish into the river, resulting in a loss, to recover for which the present action was brought.   It was undisputed that the collapse was caused by the weight of the barrels which was beyond the sustaining capacity of the piling, the latter having become decayed through lapse of time.   The court below submitted the case to the jury, who found in favor of plaintiffs and from judgment entered on the verdict defendant appealed.

The law governing the liability of an owner for defects in premises in possession of a tenant is well established and the only difficulty here is in applying it to the particular facts of this case.   As between landlord and tenant, in absence of express covenants in the lease, the rule is that no implied covenant exists on the part of the landlord either to put the premises in repair or to keep

them so, or that the premises are in a tenantable condition and the tenant takes the property subject to all existing defects which can be ascertained by inspection: Robinson v. Heverin, 50 Pa. Superior Ct. 546; Levine v. McClenathan, 246 Pa. 374. In the latter case we said: "It is well settled in our state that no implied covenant arises, out of the relation of landlord and tenant, upon the part of the landlord to repair, nor is there any implied warranty that the leased premises are tenantable. In the absence of a covenant in the lease requiring the lessor to repair, no such duty rests upon the landlord, and if damages result to the tenant by reason of failure to make repairs, there can be no recovery against the landlord......The doctrine of caveat emptor applies to leases of real property......The tenant takes the property as it is and he must be the judge of its tenantable condition." The above rules have been applied even where the defect complained of was in the construction of the building. Thus, in the same case, where the tenant's goods were injured by reason of a leaky condition of the premises, we said (page 377): "We know of no case in Pennsylvania, and none has been called to our attention, in which a tenant was permitted to recover damages against the landlord upon the ground that the demised premises had been defectively or improperly constructed. If a tenant could recover damages upon the ground that the demised premises had not been properly constructed, all that has been said in our cases about the rule of caveat emptor would be meaningless ......No case decided in our State can be cited in support of the contention that there can be a recovery of damages by the tenant against the landlord when the negligence charged was faulty construction of the original building." Of course if there has been misrepresentation or a concealment of defects not obvious to inspection, a different rule will apply. If the landlord has information of a defect likely to cause injury and such defect is one the tenant cannot discover by reason-

able inspection, the former is bound to disclose it. But he is not required to search for defects nor call attention to obvious ones or those reasonably discoverable by the tenant.

On the other hand, the rule is equally well settled that so far as third persons are concerned the landlord is liable for defects existing at the time of executing the lease; but where the premises become defective while in the occupancy and control of a tenant and such defects result in injury complained of, the tenant alone is liable. The landlord, however, cannot relieve himself from liability to others by placing a tenant in possession of property. If a defect arises while the premises are in possesion of a tenant and continues without repair until the expiration of the lease, it is then the duty of the landlord to repair and if he fails to do so he remains liable, though he re-leases the premises to another tenant: McLaughlin v. Kelly, 230 Pa. 251, 256, 258, and cases cited; see also Cunningham v. Rogers, 225 Pa. 132; Folkman v. Lauer, 244 Pa. 605.

In the present case the exact status of plaintiffs with respect to the premises is not clear. They deny they were sub-tenants and contend the transaction with respect to the storage of the fish constituted merely a bailment for hire. A lease contemplates the passing of the right to possess a particular piece of property to the exclusion of others: 24 Cyc. 878; 25 Cyc. 640. The testimony is that plaintiffs applied for "space for storing mackerel." The barrels were stored under a verbal agreement that plaintiffs should pay "either twelve cents per barrel or for the space occupied" as should be subsequently agreed upon. The bulkhead collapsed before a final agreement was entered into. If a designated space was to be set aside for plaintiffs' exclusive use they became lessees. If, on the other hand, they were to store fish in common with others at a price per barrel, without definite space being allotted, they were merely licensees or bailees. If lessees, they had express notice

they were dealing with lessees and their rights rose no higher than the rights of their lessors. They were subject to the same principles of law applicable between defendant and its lessees. Consequently, if the defects in the piers were discoverable by reasonable inspection, and there is evidence that such was the case, the landlord was not liable to them for injuries sustained by reason of the condition of the premises.

If, on the contrary, the arrangement between plaintiffs and lessee was one of mere license or bailment, as contended by plaintiffs, defendant owed to plaintiffs the duty of keeping the premises in a reasonably safe condition for use for the purpose intended and that obligation could not be avoided by placing the premises in the hands of a tenant. Defendant, however, contends the premises were not used for the purposes contemplated by the lease, but, on the contrary, were used for general storage purposes, notwithstanding the provision that they were leased only for the purpose of storage of freight. If this provision was violated and such violation caused the injury to plaintiffs' goods, defendant would not be liable for such injury, because the proximate cause of the loss would have been, not the defective condition of the premises, but the use of the premises in violation of the terms of the lease.

Storage of freight cannot, under the circumstances, be construed as a matter of law to mean storage of merchandise in general, otherwise no necessity existed for limiting the use by the word "freight." A reasonable construction of the words means freight in course of transportation and temporarily stored in the ordinary course of transit in connection with the business carried on by the lessee.

On reargument, counsel for plaintiffs admitted the mackerel in question was placed on the bulkhead for storage without having first obtained the consent in writing of defendant. This constituted a use of the premises in violation of the terms of the lease and as

plaintiffs' rights could rise no higher than those of their lessors, it is not necessary, under this view of the case, to consider other questions raised in the appeal. The court below, consequently, committed error in refusing defendant's ninth point which was as follows: "The verdict should be for defendant."

The twelfth assignment of error is sustained and the judgment of the court below is reversed and judgment entered for, defendant non obstante veredicto.