## Deutsch, Appellant, v. Max et al., Exrs.

Argued February 4, 1935.  Before Frazer, C. J., Simpson, Schaffer, Maxey, Drew and Linn, JJ.

*Fred B. Gernerd,* with him *Otto Wiencke,* for appellant.

*Oliver W. Frey,* for appellee.

Opinion by Mr. Justice Maxey, April 29, 1935:

This is an action by a domestic servant against the landlord of her employer, for damages arising from injuries she received by reason of a defect in premises leased by the landlord to the employer.  On February 1, 1929, Jacob Max (now deceased) owned a three-story frame building in Allentown.  On that day he leased this property to Joseph Rosenberg for three years to be used as a grocery store and dwelling.  Possession of the de-

mised premises was taken immediately. Facing north Second Street there was a second story front porch with wooden balustrades around it. On July 13, 1931, the tenant employed plaintiff as a domestic servant. The latter had come to this country from Germany about a year previously and had been employed by other families before entering Rosenberg's employment. On the afternoon of August 31, 1931, while engaged in cleaning the second floor, she walked out upon the front porch and there while "shaking a small carpet" "the balustrade went out" and she fell upon the cement sidewalk twelve to fourteen feet below, inflicting upon her very serious and permanent injuries. The balustrades were defective, the joists and uprights were decayed, and the nails supporting the balustrades attached to the uprights were rusted off. A witness to this accident testified that "she [the plaintiff] came down on her hands and turned over." He found her "bleeding from the mouth, all bloody and badly hurt." He described the balustrade as follows: "When it struck the pavement it went into kindling wood, and flew apart, there was not a piece together it was so rotten. The nails were rotted off." The negligence charged was "that although said defective, decayed and rotten condition of said porches attached to said premises was well known to the said Jacob Max, now deceased [the landlord], prior to and at the time of said letting, he failed, neglected and refused to repair the same, but allowed the same to remain in said defective, decayed and dangerous condition." The above witness testified further that he had been a carpenter foreman for many years, that in the year 1930 (a year before the accident) he lived alongside the premises in question, and that his attention was called to the defective condition of this porch in 1930, by one of these defendants, who asked him to go up and take measurements "and find out what it would cost to fix it up." He gave them an estimate but nothing was done about it. He had found the porch in a defective condition and "the rails on the front balustrade were ready

to come apart," and one of the defendants stood near him on a ladder while he (the witness) was making this examination. The witness also discussed the condition of this porch with another one of the defendants before the accident. He testified that his examination of the balustrade and the uprights convinced him that this defective condition had existed "for fully five years" and that this rotten condition of the porch "could have been seen by anyone making a reasonable inspection of it." Frank Minner, building inspector for the City of Allentown, rendered an expert opinion that the "rotted condition of the balustrade and the uprights existed for not less than six, seven, or eight years." Another witness, also a carpenter, gave similar testimony. After trial the jury rendered a verdict in favor of plaintiff in the sum of $7,000. Defendants entered rules for judgment n. o. v. and for a new trial. The court sustained the motion for judgment n. o. v., basing its decision upon the proposition that this domestic servant was "so far identified with the tenant" that she "could have no right of recovery against the landlord."

This case is ruled by the principle that where a landlord lets premises *in a ruinous condition* or *in a condition amounting to a nuisance,* the landlord is liable for injuries resulting therefrom. This principle has been recognized in numerous cases in this and other jurisdictions. See Harte v. Jones, 287 Pa. 37, 134 A. 467; Cunningham v. Rogers, 225 Pa. 132, 73 A. 1094, and Mitchell v. Sinn, Inc., 308 Pa. 1, 161 A. 538. In the latter case, Mr. Justice KEPHART, speaking for the court, said: "The liability of a landlord to third persons, arises only when he has (1) contracted to repair, or (2) *let the premises in a ruinous condition* [italics supplied], or (3) expressly licensed the tenant to do acts amounting to a nuisance." In Knauss v. Brua, 107 Pa. 85, this court said: ". . . To make the lessor so liable the effect must be one that arises necessarily *from a continuance of the use of the property as it was when the tenant took possession of it* [italics sup-

plied]." See also Fow v. Roberts, 108 Pa. 489. In Edwards v. N. Y. & H. R. R. Co., 98 N. Y. Rep. 245, the Court of Appeals of New York, in an opinion by EARL, J., gave expression to the well-recognized principle that the liability of a landlord in a case of this character is not based upon the "contractual obligation but must rest entirely upon its delictum. . . . If he [a landlord] demises premises knowing that they are dangerous and unfit for the use for which they are hired, and fails to disclose their condition, he is guilty of negligence which will in many cases impose responsibility upon him." In Nelson v. Liverpool Brewery Co., 46 L. J. Com. P. 675, 2 C. P. D. 311, 25 Week. Rep. 877, this same principle was expressed, the court there stating that where a landlord lets premises "in a ruinous condition" it is "a misfeasance" and the landlord is liable for resulting injuries. In that case plaintiff was a barman, in the employ of the tenant, and while on the premises was knocked down by a chimney-pot falling upon him. After stating the above quoted principle, the court set aside the verdict for plaintiff because "it is admitted that the premises were not out of repair when Farragher [plaintiff's employer] became the tenant."

In an article on "Tort Liability of a Landlord," 26 Mich. Law Rev. 260, there is expressed this principle (page 268) : "The actual holdings in the cases lead to this result: The landlord, as a rule, need not, before leasing the premises, look for defects therein. But if he has knowledge of facts that would lead a reasonable man to suspect that defects actually exist, he should disclose such facts to the prospective tenant." In a footnote appears the following : "So the proper statement of the rule is that the landlord will not be liable for concealed defects or dangerous conditions existing at the time of the demise unless he knew of the defects or had knowledge of facts from which he ought to have known or will be presumed to have known of them. [Page 399:] A total failure to act when inaction creates danger may very well

constitute negligence." In Tiffany on Landlord and Tenant, volume 1, page 563, it is stated: "The principle that one who delivers an article which he knows to be dangerous to another ignorant of its qualities, without notice of its nature or qualities, is liable for any injury reasonably likely to result, and which does result, has been applied to the letting of tenements. [Page 564:] That one who induces another to occupy land belonging to him owes to the latter a duty to inform him of facts which render such occupancy dangerous, and that, in failing to do so, he is guilty of negligence, would seem to admit of little question. This duty may well be assimilated as in the language above quoted, to that of one who sells a dangerous article to one ignorant of its character, he being bound to warn the purchaser of the danger if he knows thereof; and it evidently also bears a close resemblance to the obligation imposed upon the proprietor of land, as regards persons invited by him thereon, for purposes of mutual advantage, to take reasonable precautions to make the premises safe, or to warn such persons of dangerous conditions. It would be singular if, while one inviting another, for purposes mutually beneficial, to come upon land for a brief period, owes a duty to protect him from dangers of which the former knows or should know, or to notify him of such dangers, he were to owe no such duty to one whom he invites to come upon the land for a protracted period, whether a lessee, lodger, servant or in any other capacity." In Cowen v. Sunderland, 145 Mass. 363, 14 N. E. 117, the Supreme Judicial Court of Massachusetts said: "There was evidence that she [tenant-plaintiff] did not know of the existence or location of the cesspool; that it was in the yard she had hired, and was entitled to use; that it was covered with from four to six inches of dirt, on which grass and weeds were growing; that it presented the same appearance as the rest of the yard; that it had never been pointed out to her, and that it was where she passed over it in her use of the yard; that the boards which covered it, and on which the earth

rested, were rotten and decayed; and that, in stepping upon this covering of the cesspool, she was thrown into it and injured. There was further evidence that this cover had been repaired with old boards some time before, by the defendant's direction, and that defendant was present when this was done. From the description of witnesses of these repairs to the covering of the cesspool, the jury might fairly have inferred that it was left in an unsafe state, and known to be so. Upon these facts, the learned judge erred in withdrawing the case from the jury. It should have been submitted, with proper instructions, to determine whether the defendant knew the defective covering of the cesspool, and the danger therefrom, had negligently omitted to inform the plaintiff, and whether the plaintiff herself, making careful examination, had been injured thereby by reason of a want of proper examination." The court said further in that case: "Obviously, there may be many concealed defects and dangers about a house, which careful examination will not discover. If these are known to the lessor, it is for him to reveal them. Traps or contrivances may exist, by means of which the most careful occupant might be injured. 'Such traps or contrivances,' says Mr. Justice FIELD, 'are not merely a want of repair; they are in a sense active agencies of mischief, which no tenant would expect to find, even in a decayed and ruinous tenement': Bowe v. Hunking, 135 Mass. 380."

In Kirchner v. Smith, 207 Pa. 431, 56 A. 947, the tenant had leased certain premises for the term of one year, and then took a roomer into the house. The latter returned unexpectedly one night to her office and room and found the door locked. She undertook to tap upon a window, which she could reach only by stepping off the end of the doorstep upon the grating. She put her foot down there, but instead of finding support, it went through an opening. This court held in that case that she clearly had a right of action against the landlord. In Folkman v. Lauer, 244 Pa. 605, 607, 91 A. 218, this court said:

"Whatever may be the rights or liabilities of the parties to the lease between themselves, the responsibility of the landlord for a dangerous condition of the demised premises at the time the tenants took possession is not shifted by the undertaking of the tenants to make repairs as far as the rights of a stranger to the contract are concerned who was rightfully on the premises and was injured because of the failure to remove such dangerous condition." We stated in Cunningham v. Rogers (supra), 225 Pa. 132, 73 A. 1094: "The general principle is undisputed that when a landlord lets premises in a dangerous condition, he is liable for the consequences which may result from the condition he permitted to exist." See also Garson v. Godley, 26 Pa. 111; Wunder v. McLean, 134 Pa. 334, 19 A. 749; McLaughlin v. Kelly, 230 Pa. 251, 79 A. 552, and 16 R. C. L., section 594, page 1076.

To impose liability on a landlord for injuries resulting to any person by reason of the former's leasing a building which he knew was in a ruinous condition, it is not necessary that *the entire building* leased be in such condition. The ruinous condition menacing the lives and limbs of those lawfully on the premises and which will support a tort action may be a condition affecting either the whole *or any part of the building* leased. The balustrade of a second story porch is an important part of any premises occupied by a tenant, his family and his servants. It has a function vital to the safety of the occupiers of the premises. The testimony in this case is convincing that the ruinous condition of this second story porch and its uprights existed at the time the building was rented to plaintiff's employer and for several years prior thereto. This condition was due to neglect for which defendants must accept responsibility. This negligence was the proximate cause of plaintiff's injury. Her right to recover is clear.

The judgment of the court below is reversed and judgment is herein entered for the plaintiff on the verdict.

458

I am unable to agree with the opinion of the majority. It points to no case, in this Commonwealth or elsewhere, in which a landlord has been held liable to a servant of a tenant under circumstances such as are here presented. In my judgment, the result of the majority's decision will be to open the door to innumerable fraudulent and unfounded claims and to impose an unduly heavy burden on landlords—a burden that is without sanction in the law.

The fundamental weakness of the majority opinion lies in its assumption, without discussion, that plaintiff, a domestic servant of the tenant, is in the position of a "third person" or stranger to the premises and is therefore owed some higher duty by the landlord than is the tenant. No consideration is given to the question whether or not a servant is in a better position than the tenant, and no reason is disclosed why any different rule should apply to the tenant's domestic servant than to a member of the tenant's family. Plaintiff's counsel admit their inability to find a case in the appellate courts of this Commonwealth decisive of the question of plaintiff's status, and no such case has been referred to by the majority. Under these circumstances, it seems to me a mistake to avoid discussion of the problem altogether and to fail to state the grounds on which a principle well established in the common law and in the law of most jurisdictions today is being summarily rejected.

In the first place, it is clear that the tenant in the instant case could not recover from the landlord. It has many times been pointed out in this Commonwealth that, in the absence of a covenant requiring the landlord to repair, "the tenant takes the property subject to all existing defects which can be ascertained by inspection": Levin v. Phila., 277 Pa. 560; Moore v. Weber, 71 Pa. 429; Levine v. McClenathan, 246 Pa. 374; Fed. Metal Bed Co. v. Alpha Sign Co., 289 Pa. 175; Robinson v. Heverin, 50 Pa. Superior Ct. 546; Redman v. Weeter, 86 Pa. Superior Ct. 173; Rosser v. Cusani, 97 Pa. Superior Ct. 255. As

was said by Mr. Justice SHARSWOOD in Moore v. Weber, supra, "The rule here, as in other cases, is caveat emptor. The lessee's eyes are his bargain. He is bound to examine the premises he rents, and secure himself by covenants, to repair and rebuild." Accordingly, where damages result to the tenant by reason of such defects, there can be no recovery against the landlord: Levine v. McClenathan, supra; see Levin v. Phila., supra; Robinson v. Heverin, supra; Bohlen, "Landlord and Tenant," 35 Harv. L. Rev. 633, 637. It is a well recognized exception to this rule that the landlord is under a duty to disclose hidden defects or traps of which he knows and which a reasonable inspection by the tenant would not disclose, and that he is liable for injuries resulting from his failure to fulfil that duty: see Levin v. Phila., supra; Restatement, Torts, section 358. But in the case before us one of plaintiff's own witnesses testified, without contradiction, that the defective condition could have been seen by anyone making a reasonable inspection of it, while the tenant himself testified that he had known the porch in question was in need of repair, and plaintiff's counsel admit in their brief that such is the case. Plainly, therefore, there was no concealment of the defect, nor can it be said that the landlord had reason to suppose that the tenant would not discover it. Such being the case, the tenant clearly could not have recovered had he been the person injured.

That a servant of the tenant, along with sublessees, members of the tenant's family, guests and other invitees of the tenant, is barred from recovery against the landlord where the tenant is barred is a common-law principle so well settled that it can admit of no doubt whatever: Levin v. Phila., supra (sublessee) ; Robinson v. Heverin, supra (member of tenant's family) ; Nelson v. Liverpool Brewery Co., 2 C. P. D. 311 (employee) ; Lane v. Cox, [1897] 1 Q. B. 415 (same) ; Willson v. Treadwell, 81 Cal. 58 (same) ; Whitmore v. Orono Pulp & Paper Co., 91 Me. 297 (same) ; Phelan v. Fitzpatrick, 188 Mass. 237

(member of family) ; Dalton v. Gibson, 192 Mass. 1 (cook) ; Boudreau v. Johnson, 241 Mass. 12 (employee) ; Clark v. Sharpe, 76 N. H. 446 (member of family) ; Clyne v. Helmes, 61 N. J. L. 358 (same) ; O'Brien v. Capwell, 59 Barb. (N. Y.) 497 (washerwoman) ; Ryan v. Wilson, 87 N. Y. 471 (employee) ; Elefante v. Pizitz, 182 App. Div. 819, affirmed 230 N. Y. 567 (guest) ; see Moore v. Logan Iron & Steel Co., 3 Sadler 143, 147 ; Robbins v. Jones, 15 C. B. (N. S.) 221, 240 ; Cavalier v. Pope, [1906] A. C. 428, 430, 432 ; Huggett v. Miers, [1908] 2 K. B. 278, 283, 288 ; Towne v. Thompson, 68 N. H. 317, 319 ; Taylor, Landlord and Tenant (9th ed.), section 175a ; Restatement, Torts, section 356. As was said by Lord MAC-NAGHTEN in Cavalier v. Pope, supra, quoting from ERLE, C. J., in Robbins v. Jones, supra, "A landlord who lets a house in a dangerous state is not liable to the tenant's customers or guests for accidents happening during the term: for, fraud apart, there is no law against letting a tumble-down house." The ground of the rule is that since invitees of the tenant are brought on the land through the tenant's and not the landlord's initiative, they should be required to look to the tenant, and not to the landlord, who has no control over their coming and going. As is pointed out by Taylor, supra, "The subtenant, servant, employee, or even a customer of the lessee, is under the same restriction [as the lessee] ; because, entering under the tenant's title, and not by any invitation, express or implied, from the owner, they assume a like risk." In Tiffany, Landlord and Tenant, section 96 (b), it is said: "The lessee's knowledge is in effect imputed to the person injured, or rather, perhaps, it is the lessee's duty, not the lessor's, to inform persons, entering on the premises by the former's invitation or permission, of the dangerous condition. A different rule, requiring the lessor to give such information to every person whom the lessee may allow upon the premises, would impose on the lessor the duties of an occupant while divested of the benefits, and would in effect prevent the leasing of any

premises in which there is a concealed source of danger to persons who might enter thereon."

Since the tenant could not have recovered from the landlord in the case at bar, and since plaintiff is the tenant's servant and therefore in no better position than he, it follows that plaintiff cannot recover. Such was the result reached in O'Brien v. Capwell, supra, where the facts were very much like those in the case before us. There plaintiff, a washerwoman in the tenant's employ, fell from a porch when the railing upon which she was hanging clothes gave way. It appeared that the porch and railing had been in a condition of decay at the time of the lease, and that the landlord had notice of this condition. Judgment upon a verdict in plaintiff's favor was entered against the landlord. In reversing the judgment and declaring that a nonsuit should have been granted, the court pointed out that, since there was no fraud or deceit, or express covenant by the landlord to repair, the tenant could not have recovered, and therefore plaintiff, who as his servant was in no better position than the tenant himself, was not entitled to recover.

It is said in the majority opinion that "This case is ruled by the principle that where a landlord lets premises *in a ruinous condition* or *in a condition amounting to a nuisance,* the landlord is liable for injuries resulting therefrom." No such principle is, in my opinion, applicable to the case before us. The majority rely on Cunningham v. Rogers, 225 Pa. 132, Harte v. Jones, 287 Pa. 37, and Mitchell v. Sinn, 308 Pa. 1, in support of this principle. In each of those cases, however, it is expressly said that the liability referred to is the liability of a landlord to *third persons.* No attempt is made in any of them, or in any other Pennsylvania case referred to by the majority, to define or even suggest what is meant by "third persons." Furthermore, the statement relied on was wholly unnecessary to the decision in each of the cases, since the holding in each was that the landlord was not liable. An examination of the cases discloses that the

statement that the landlord is liable to third persons
when he has let the premises in a ruinous condition first
appears in Cunningham v. Rogers, supra, where it is
quoted from 2 Woodfall, Landlord and Tenant (1st Am.
ed.), *735. It appears from Woodfall that this state-
ment was taken from the following language by Lopes, J.,
in Nelson v. Liverpool Brewing Co., supra (also unneces-
sary to the decision of the case in which it occurs, since
the landlord was held not liable) : "There are only two
ways in which landlords or owners can be made liable, in
the case of an injury to a *stranger* by the defective repair
of premises let to a tenant, the occupier and the occupier
alone being prima facie liable: first, in the case of a con-
tract by the landlord to do repairs, where the tenant can
sue him for not repairing; secondly, in the case of a mis-
feasance by the landlord, as, for instance, where he lets
premises in a ruinous condition." In support of that
statement Lopes, J., cited Payne v. Rogers, 2 H. Bl. 350,
Todd v. Flight, 9 C. B. (N. S.) 377, Russell v. Shenton,
3 Q. B. 449, and Pretty v. Bickmore, L. R. 8 C. P. 401. In
Todd v. Flight the plaintiff, owner of property adjoining
a stack of chimneys belonging to defendant, sued for the
damage to his premises caused by the falling of the chim-
neys. Similarly, in Russell v. Shenton, plaintiff was an
adjoining landowner who sued for damage from drains
and sewers on the defendant's land. In Payne v. Rogers
and Pretty v. Bickmore the plaintiffs were pedestrians
on the streets who were injured by defects in the footways
adjoining defendants' premises. It may be noted that in
the Russell and Bickmore cases the landlord was held not
liable. In view of the fact that the plaintiff in each of
those cases was a landowner or pedestrian, it cannot suc-
cessfully be contended that Lopes, J., intended the term
"stranger" in his statement to include servants or other
invitees of the tenant, particularly when it is remem-
bered that it is held in other English cases that invitees
of the tenant are in no better position than the tenant
himself.

It is true that in Folkman v. Lauer, 244 Pa. 605, and Kirchner v. Smith, 207 Pa. 431, invitees of the tenants were allowed to recover from the landlord, and the ground in each was stated to be that a landlord who lets premises in a dangerous condition is liable for injuries resulting therefrom. The facts of those cases, however, are clearly unlike those of the case before us. In Folkman v. Lauer the plaintiff was injured by the collapse of a grandstand in a baseball park owned by the defendant and leased to a tenant for the purpose of public entertainment. In such a case the landlord, having reason to believe that the unsuspecting public will be admitted before dangerous defects of which he knows or should know are removed, is under a duty to remove such defects before turning over the premises to the tenant. His liability for injuries resulting from his failure to do so is a recognized exception to the general rule: see Restatement, Torts, section 359. Edwards v. N. Y. & H. R. R. Co., 98 N. Y. 245, cited by the majority, is also a case of this sort. In Kirchner v. Smith the plaintiff, although a roomer of the tenant, was injured on the sidewalk; furthermore, there was testimony (which, in view of the verdict for plaintiff, had to be taken as true) that the landlord had promised, before the execution of the lease, to make necessary repairs, and that he had notice of the defect which caused plaintiff's injury. Where the landlord has contracted to repair, either the tenant or his invitee may recover for injuries resulting from the landlord's negligent failure to repair: see Restatement, Torts, section 357. Carson v. Godley, 26 Pa. 111, and Cowen v. Sunderland, 145 Mass. 363, relied on by the majority, both fall within the exception previously referred to, that where the landlord has notice of a latent defect and knows or has reason to know that the tenant will not discover it, he is liable to the tenant, as well as to the tenant's invitee, for injuries resulting therefrom. On the other hand, Knauss v. Brua, 107 Pa. 85, Fow v. Roberts, 108 Pa. 489, and Wunder v. McLean, 134 Pa.

334, cited in the majority opinion, are all cases in which the plaintiff was an adjoining property owner who complained of the leakage of offensive sewage matter into or upon his premises; while the plaintiff in McLaughlin v. Kelly, 230 Pa. 251, was a pedestrian injured by the defective condition of a sidewalk. Plainly, those cases have no bearing whatever upon the question whether a tenant can recover for injuries from defects observable upon reasonable inspection by him, and whether a servant of the tenant can recover where the tenant himself would be barred.

The opinion of the majority purports to find support for its position in Tiffany, supra, and in an article on "Tort Liability of a Landlord," in 26 Mich. L. Rev. 260. An examination of the passages from which the majority quotes discloses, however, that in both instances the discussion is concerned with concealed defects or dangers, defects which are known to the lessor but which are "not apparent to the intending lessee," in which case of course there can be no doubt of the landlord's liability to the tenant and the tenant's invitees if he fails to warn the tenant. It is in fact expressly pointed out by Tiffany (sections 86 (a) and 96 (a)) that the landlord is not liable to the tenant for defects known to the latter or observable upon reasonable inspection, and that, as to persons "rightfully on the premises by the tenant's request or permission . . . the landlord is liable in so far as he would be liable to the tenant, and no further." The same analysis is found in the article in the Michigan Law Review.

Clearly, therefore, the position of the majority is without proper support either in reason or in authority, and in fact runs counter to a sound and firmly established rule. Such being the case, I am compelled to dissent from its conclusion. The judgment of the court below should be affirmed.

Mr. Justice SCHAFFER joined in this dissent.