## McAuvic, Appellant, *v.* Silas.

Argued March 19, 1959. Before RHODES, P. J., HIRT, GUNTHER, WOODSIDE, ERVIN, and WATKINS, JJ. (WRIGHT, J., absent).

*William J. Dempsey,* with him *John R. Lenahan,* for appellant.

*Harry P. O'Neill,* with him *Frank M. Walsh,* for appellee.

Opinion by Gunther, J., June 10, 1959:

On December 16, 1947, Margaret McAuvic, plaintiff, leased one half of a double dwelling from the defendant owner, Alexander Silas. From the date of the lease until the date of the accident the plaintiff used, with defendant's permission, the back porch of the adjoining tenant, for the purpose of hanging clothes.

On April 20, 1957, while plaintiff was hanging clothes and engaged in a conversation on said porch with Sarah Theobald, a guest of the other tenant, Sarah Theobald leaned against a railing of the porch which gave away, causing her to be thrown to the ground. Plaintiff attempted to save Miss Theobald and while so doing broke her finger. Upon trial the court below granted a compulsory nonsuit, and this appeal is from the lower court's refusal to take off the nonsuit.

Under the evidence as presented in the record, was defendant negligent in not maintaining said porch and railing reasonably safe for his tenants?

Defendant purchased this double house, known as 1317-1319 Wyoming Avenue, Scranton, Pennsylvania, in 1945. Mrs. Clara Green, who occupied 1317 before and after the sale, was one of the sellers. Each half of the double house had its own back porch. In 1947, defendant rented 1319 to plaintiff, who claims that she was informed by defendant that she could use the porch of 1317 for hanging clothes, and that she so used it, every two weeks, for over a period of ten years.

At this point it may be in order to discuss some of the rules pertaining to landlord and tenant, as set forth by our Supreme Court. A landlord out of possession may be liable where he conceals a dangerous condition of which he has knowledge and of which the tenant has no knowledge, or cannot be expected to discover, or where he should know of a dangerous condition and leases the premises for a purpose involving a public

use and has reason to believe the tenant will not first correct the condition. A landlord of a multiple-tenanted building, having control of sidewalks, common approaches, passageways or parts of the building common to all tenants, becomes liable where he either had actual notice of a defective condition therein, or was chargeable with constructive notice. *Lopez vs. Gukenback,* 391 Pa. 359, 137 A. 2d 771. In the present case the defendant did not retain control of any portion of 1317 Wyoming Avenue, as clearly disclosed by the testimony of Mrs. Green:

"Q. By that you mean each person lived on their own side of the house and it was a typical double house in all senses of the word? A. Yes. Q. And one family had half the house and the other family had the other half of the house? A. Yes. Q. And after Mr. Silas bought the house you remained there as a tenant on one side? A. Yes. Q. And you had full control and possession of that half of the house, did you not? A. Yes."

The evidence clearly discloses that the back porch of 1317 Wyoming Avenue was not a common approach.

The lower Court, in its opinion, held as follows:

"We reject the contention that the rear porch of No. 1317 was a common porch, way or other portion of the premises reserved by the lessor and in his possession and control. The mere permission to plaintiff to hang wash from Mrs. Green's porch did not establish a common usage of the same for the very good reason that No. 1317 had been previously leased to Mrs. Green and remained through the years in her possession. The defendant had demised the porch to Mrs. Green and could not make the same part of plaintiff's lease. Neither was the porch in question a common entrance; it served only the premises at No. 1317."

Plaintiff contends that in addition to a written lease she also had an oral leasehold (for a certain purpose)

to her neighbor's porch on 1317 Wyoming Avenue. She states that on April 20, 1957, she was exercising her rights under this oral agreement when the accident happened. If that is the theory upon which plaintiff claims a right to recovery, then the rule applies which holds that a tenant takes the property as he finds it, with all existing defects, which he knows or can ascertain by reasonable inspection. *Levin v. Philadelphia,* 277 Pa. 560, 121 A. 331. *Redman v. Weeter,* 86 Pa. Superior Ct. 173. As was said by Mr. Justice SHARSWOOD in *Moore v. Weber,* 71 Pa. 429, "The lessee's eyes are his bargain. He is bound to examine the premises he rents, and secure himself by covenants to repair and rebuild."

A well recognized exception to this rule exists where the landlord gives the tenant possession of land containing, to the landlord's knowledge, dangerous hidden defects unknown to the tenant and which by reasonable inspection he cannot discover. In such a case the landlord is guilty of active wrongdoing, because he commits an act which almost inevitably draws the tenant into a hidden trap. This exception is inapplicable in the instant case.

If no oral lease existed for the porch, then the relationship of landlord and tenant did not exist, and the plaintiff entered upon the premises solely for her own purpose as a licensee. The testimony points to the facts that plaintiff was on the porch for the purpose of hanging her laundry and solely for her own purpose. In *Bowser v. Artman,* 363 Pa. 388, the Supreme Court stated that if plaintiff was a mere licensee, defendant's duty was only to correct those conditions of which defendants had actual knowledge. There is no evidence to show that defendant had actual knowledge of a defective condition.

The plaintiff can adopt one of two theories to recover, one of a tenant or that of a licensee. We cannot

see how she can recover under either in the instant case.

As to actual or constructive notice, the lower court, in its learned opinion, stated as follows: "There is not only an absence of proof of knowledge, actual or constructive, by the defendant of the existence of a defect, but positive assertions by both plaintiff and Mrs. Green, that they never noticed anything wrong with the bannister after 1955. The evidence of negligence is unsatisfactory. The collapse of the railing is readily visualized because of the application of a weight over two hundred pounds but not by reason of a defective condition."

Therefore, under the evidence and the law applicable to this case, we are not inclined to reverse the lower court and to take off the compulsory nonsuit.

Order of the court is affirmed.