Helen CAMECHI and Elick J. Camechi, Plaintiffs,

v.

A. T. NEWELL REALTY COMPANY and William Beck, Defendants.

Civ. A. No. 607.

United States District Court
W. D. Pennsylvania.

June 12, 1959.

John M. Wolford, Erie, Pa., for plaintiff.

John G. Gent, Erie, Pa., for defendant.

WILLSON, District Judge.

On June 19, 1958, the plaintiffs, Elick J. and Helen Camechi, husband and wife, citizens of California, filed a complaint claiming damages arising out of injuries sustained by the wife plaintiff as a result of the collapse of a dwelling house porch upon which she was standing while a guest of the corporate defendant's lessee.

The diversity jurisdiction of the court is invoked because defendants are both citizens of Pennsylvania and of this district. Defendants filed a timely answer and thereafter filed a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure, 28 U. S.C.A., together with supporting affidavits. The basis of the motion for summary judgment is, of course, that there is no genuine issue as to any material fact in the case. Counsel for each of the parties have been heard at argument and briefs have been filed and duly considered. It is this court's opinion that the motion for summary judgment must be granted.

The court has examined the pleadings, depositions and affidavits and from these the following facts appear: The Newell Realty Company is a Pennsylvania corporation which has its principal place of business in Bradford, and in June 1955, it owned a dwelling house situate at 88 Davis Street in that City. Through its manager and treasurer, William Beck, a co-defendant in this case, this home was leased as a single unit dwelling house to Richard K. Soble by a written instrument dated June 27, 1955. Under the terms of this lease, the lessee went into possession for the period of a year, with any holdover to constitute a tenancy from month to month, but under the same terms and conditions. In the lease there was no undertaking on the part of the lessor-owner to maintain the premises in repair. Attached to the rear of the dwelling house was a wooden back porch. It consisted of a wooden platform which rested upon legs for support, enclosed

by a railing. The only conflict as to the facts appears to be concerning the character of certain repairs made at the dwelling house in June of 1955 at the time Soble took possession. Plaintiffs contend that repairs were being made to the porch at the time the lessee moved in on June 27, 1955 and that they were not completed until sometime in July 1955 after the tenants had moved in. Defendants contend that no repairs were made to the porch subsequent to June 27, 1955, but state, however, that "siding was placed along the side of the building in close proximity to the porch in June of 1955." Defendants say that neither the porch nor its foundation were changed or disturbed. Be that as it may, any conflict in the facts relating to repairs does not raise any genuine issue of fact which would preclude summary judgment.

A crucial fact not in dispute is that the lessee Soble was aware of the existing alleged defective condition in the back porch on and prior to June 29, 1957, which was the date on which the wife-plaintiff fell. In the complaint, paragraph 11, plaintiffs aver:

"(11) Prior to June 29, 1957, on several occasions corporate defendant, through agent William Beck, was notified by lessees of the dangerous condition of the rear platform; said notice was further given prior to the last renewal of the lease between corporate defendant and lessee; and corporate defendant, acting through William Beck its agent, and William Beck, promised or agreed to take care of or remedy the dangerous condition."

In this respect, the defendants admit that "on or about May 28, 1957, the tenant talked with the Defendant's agent William Beck and advised that the porch on the rear of the dwelling house was in need of repair. The Defendant orally agreed to make repairs to the dwelling and particularly the porch if they were required, * * *."

The defendant contacted an independent contractor to inspect the premises and determine what repairs were necessary, and a visual inspection was conducted but no repairs whatsoever were made to the porch between the dates of May 28, 1957 and June 29, 1957, the date of the accident. The wife-plaintiff, Helen Camechi, on June 29, 1957 was a house guest of lessee, her brother-in-law, having arrived several days prior to the date of the accident. On June 29, 1957, she stepped out from the house onto the back porch and was injured when the porch collapsed, causing her to be thrown to the ground.

The plaintiffs' amended complaint rests upon two theories for the imposition of liability in this case upon the defendants: (1) the lessor's negligent repairs which were made to the porch in June 1955, and (2) the existence of a known (to the lessor) dangerous condition in the structure of the porch in June, 1957 and the failure of the lessor to repair this in conformity with his oral promise of May 28, 1957 and his duty to do so. With respect to this first advanced theory, the Restatement of the Law of Torts, Section 362, provides as follows:

"Negligent Repairs By Lessor.

"A lessor of land who, by purporting to make repairs thereon while the land is in the possession of his lessee or by the negligent manner in which he has made such repairs has, as the lessee neither knows nor should know, made the land more dangerous for use, is subject to liability for bodily harm caused thereby to the lessee and others upon the land with the consent of the lessee or a sub-lessee."

It is to be noticed that Comment C of this section more directly spells out the application of this section to the factual situation presented in the case at bar, by stating:

"c. The lessor is subject to liability if, but only if, the lessee neither knows nor should know that the purported repairs have not been made or have been negligently made and so, relying upon the deceptive appearance of safety, subjects him-

self to the dangers or invites or permits his licensees to encounter them. * * *"

■ Viewing the facts in the light most favorable to the plaintiffs (i. e. that repairs were made to the back porch in June 1955, and that these repairs were negligently made) there still exists no legal basis upon which liability in this case can rest for it is a conceded and undisputed material fact that the lessee Soble had notice and knowledge of the fact that repairs were made in June 1955, and that a so-called dangerous condition existed in the back porch prior to June 29, 1957, and as early as May 28, 1957. For this reason, that the lessee had knowledge in May 1957, it is apparent that the conflict in positions concerning whether or not repairs were made in June 1955 is not a genuine issue as to any material fact. The material facts of the case at bar fall within the amplification of Section 362 as spelled out in Comment C. This knowledge on the part of the lessee exculpates the landlord from liability and thus obviates the further consideration of the question of the applicability of the rule imposing liability for negligent repairs to the facts of this case where the injury occurred some two years after the repairs were alleged to be made.

■■ With regard to the second theory advanced by the plaintiffs, this is clearly ruled and disposed of by the principles enunciated in Harris v. Lewistown Trust Co., 326 Pa. 145, 191 A. 34, 35, 110 A.L.R. 749, and supports the conclusion that there is no legal basis upon which liability can be asserted against the defendants. There, as in this case, a dangerous condition was alleged to have existed in the leased premises, and there as here, a promise to repair the allegedly defective condition was made by the landlord which was never honored, and there as here, injuries were sustained, but there to the wife of the lessee as a result of the collapse of a cellar stairway. In the Harris case, as here, the allegedly defective condition was known both to the lessor and lessee prior to the accident. In that case, the Supreme Court of Pennsylvania affirmed the entry of judgment *non obstante veredicto* entered against the wife by the lower court.

The court said in part:

"The general rule in this country, and also in England, is that an agreement to repair does not impose upon the owner a liability in tort at the suit of the tenant or others lawfully on the land in the right of the tenant: [Citing cases]

"Fundamentally, this view is based upon the conclusion that liability in tort should follow as a legal incident of occupation and control: Restatement of the Law of Torts, § 357, Comment (a). By the great weight of authority, occupation and control are not reserved through an agreement by the owner to repair: [Citing cases] As was said by the then Chief Judge Cardozo in the Cullings case [Cullings v. Goetz, 256 N.Y. 287, 176 N.E. 397], 'The tenant and no one else may keep visitors away till the danger is abated, or adapt the warning to the need. The landlord has at most a privilege to enter for the doing of the work, and at times not even that if the occupant protests. "The power of control necessary to raise the duty * * implies something more than the right or liability to repair the premises. It implies the power and the *right to admit people to the premises and to exclude people from them*." (Cavalier v. Pope, (1906) A.C. 433).' * * *"

And continuing, the court said:

" * * * We have held repeatedly that a tenant takes the property as he finds it, with all existing defects which he knows or can ascertain by reasonable inspection. This is so even though the premises are in a condition called ruinous. Robbins v. Jones, 15 C.B.(N.S.) 221, 240. Where the entire possession and enjoyment of property is transferred by landlord to tenant, the rule of caveat emptor applies. As was said by Mr.

Justice Sharswood in Moore v. Weber, 71 Pa. 429. 'The lessee's eyes are his bargain. He is bound to examine the premises he rents, and secure himself by covenants, to repair and rebuild.'

"A well-recognized exception to this rule exists where the landlord gives the tenant possession of land containing, to the landlord's knowledge, dangerous hidden defects unknown to the tenant and which by reasonable inspection he cannot discover. In such a case, the landlord is guilty of active wrongdoing, because he commits an act which almost inevitably draws the tenant into a hidden trap. Restatement, Torts, § 358; See Carson v. Godley, 26 Pa. 111; Levin v. Philadelphia, 277 Pa. 560, 121 A. 331; Cowen v. Sunderland, 145 Mass. 363, 14 N.E. 117; 1 Tiffany, Landlord and Tenant (1910) 563, 564. This exception is inapplicable here. There was no hidden defect, the tenant had full knowledge of the condition of the stairs, and freely admitted it. The case thus falls without the exception, and within the general rule, and it is clear that the tenant, as plaintiff suing for his own injuries in trespass, could not recover.

"It is equally well established that where the tenant has no redress against the landlord, those on the premises in the tenant's right are likewise barred. So, in Pennsylvania, it has been held a member of the tenant's family (Robinson v. Heverin, 50 Pa.Super. 546) and a sublessee (Levin v. Philadelphia, supra) has no greater rights against the landlord than had the tenant. See, also, Moore v. Logan Iron & Steel Co., 3 Sad. 143, 7 A. 198. A similar result has been repeatedly reached elsewhere. The ground of this principle is that since members of the family, employees, guests, and other invitees of the tenant are brought on the premises through the tenant's initiative, they must look to

him and not to the owner, who is out of possession, for their protection."

█ This being a diversity case, this court is bound by the Harris v. Lewistown Trust Co. decision. Defendants are entitled to judgment.