Strothman *v.* Houggy et ux., Appellants.

Argued April 22, 1958. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., absent).

Before SMART, J.

*George M. Weis,* with him *Weis & Weis,* for appellants.

*John A. Robb,* with him *James R. Hornick,* and *Van der Voort, Royston, Robb & Leonard,* for appellees.

OPINION BY WATKINS, J., June 11, 1958:

This is an appeal from a judgment of the Court of Common Pleas of Allegheny County, entered on a verdict of a jury, in a trespass action for damages, in favor of Carol Strothman, a 3-year old minor, the appellee, and against Wilbur R. Houggy and Clara H. Houggy, his wife, appellants, in the amount of $2250.

The court reporter died shortly after the trial and there is no record. The history has been agreed upon by counsel.

Carol Strothman, a minor, by Harry N. Strothman, her guardian, and Harry N. Strothman and Sara L. Strothman, her parents, in their own right, brought this action in trespass for injuries, sustained by Carol, when a mantel fell in a house rented by the Strothmans from the Houggys. The appellants pleaded an exculpatory clause in a written lease signed by the minor's parents and Wilbur R. Houggy. The testimony developed that on January 1, 1954, the Strothmans occupied the premises of the appellants under a written lease for a period from said date to April 30, 1955, with an option to purchase. The house was new and had been built by the husband appellant.

On April 15, 1954, 3-year old Carol stood on a chair to reach for a toy on the stone mantel in the living

room and the mantel fell away from the wall to the floor, together with a mirror that had been placed upon the mantel by the parents. The mirror struck the minor on the big toe of her left foot. Testimony was introduced by both sides as to the proper method of installation and affixing the mantel. The jury determined the appellants to be negligent in the construction of the mantel and its attachment to the fireplace and found a verdict in favor of the minor appellee in the amount of $2250; but found the parents to be negligent in placing the mirror upon the mantel without support.

The mantel was described by the minor's father as a stone slab about six feet long, seven inches wide and three inches thick; about four inches of the width of the mantel rested upon the brick fireplace; the remaining three inches extended out from the front of the fireplace. The mantel was not attached to the wall in any way. Its sole means of support was by mortar between the top of the brick fireplace and the bottom of the mantel.

Clifford W. Stokes, a registered architect, testified that the mantel had not been constructed safely. He estimated that the slab in question weighed 180 pounds. The appellant, Wilbur R. Houggy, testified as to the manner of construction of the mantel and estimated its weight to between 80 and 100 pounds. He said that mortar was used to fasten the mantel and that he had been using that method, which he considered a safe one, for forty years.

The house was completed in the latter part of December, 1953. The lessees appellees, did not know of the condition of the mantel or its method of construction, nor were they informed of the same by the appellants, and its condition and method of construction

were not visible. The construction that gave way was located behind the mantel or in the fireplace wall.

The appellants' motion for judgment non obstante veredicto raises only the question of the applicability of the exculpatory clause in the lease and whether its terms released the appellants from liability for their negligence. The exculpatory clause reads as follows: "The lessor shall not be liable for any injury or damage to any person or to any property at any time on said premises or building from any cause whatever which may arise from the use or condition of said premises or building or from ice thereon, or from water, rain or snow which may leak into, issue or flow from any part of said building or from the pipes or plumbing of the same or from any other place or quarter, or from any other cause, during said term or any renewal thereof." The appellees do not contest the validity of exculpatory clauses in leases as between lessor and lessee. Their validity has been very firmly established. *Manius v. Housing Authority of the City of Pittsburgh*, 350 Pa. 512, 39 A. 2d 614 (1944).

The question here is whether the execution of the exculpatory clause takes this case out of the rule. We think not. In *Baldwin v. McEldowney*, 324 Pa. 399, 188 A. 154 (1936), in construing an exculpatory clause in a lease, identical to this one, the Court said, at page 404, "If the parties had intended to release from the consequences of dangerous condition existing before and known at the time to the landlord, more specific language would have been used to make their agreement clear." Here, as in the *Baldwin* case, the clause did not specifically release the lessor for negligence which did not "arise . . . during the term." Since the unsafe construction of the mantel existed prior to the commencement of the term, with the knowledge of the

lessors and without the knowledge of the lessees, the release by its own terms is inapplicable.

On the question of the general liability of a landlord to his tenant for injuries received by the tenant on the premises, certain legal propositions are now well settled. A tenant takes the premises as he finds them and the landlord is not liable for existing defects of which the tenants know or can ascertain by reasonable inspection. *Lopez v. Gukenback*, 391 Pa. 359, 137 A. 2d 771 (1958). See also: *Harris v. Lewistown Tr. Co.*, 326 Pa. 145, 150, 191 A. 34 (1937).

Section 358, Restatement of the Law, Torts, page 969 provides: "A lessor of land, who conceals or fails to disclose to his lessee any natural or artificial condition involving unreasonable risk of bodily harm to persons upon the land, is subject to liability for such harm caused thereby to the lessee and others on the land with the consent of the lessee or a sublessee after the lessee has taken possession, if (a) the lessee does not know of the condition or the risk involved therein, and (b) the lessor knows of the condition and realizes the risk involved therein and has reason to believe that the lessee will not discover the condition or realize the risk." This section was cited with approval in *Harris v. Lewistown Tr. Co.*, supra. See also: *Robinson v. Heverin*, 50 Pa. Superior Ct. 546 (1912), where this Court said, at page 549, "If the landlord knows of a defect likely to cause injury—such a defect as would not be disclosed by careful examination by the lessee—it is his duty to make it known."

We can see no merit in the contention of the appellants that the theory of latent defect as set forth in *Harris v. Lewistown Tr. Co.*, supra, does not apply when the tenant is in complete possession and control of the entire premises. The landlord is liable for any negligence which occurs in an area under his control

irrespective of whether the negligence involves a hidden defect or anything else. *Sloan v. Hirsch,* 283 Pa. 230, 128 A. 831 (1925). It is primarily for this very situation, where the tenant does occupy the entire premises upon which exists an undisclosed hidden defect, that the rule enunciated in the *Harris* case arose. In *Levin v. Philadelphia,* 277 Pa. 560, 121 A. 331 (1923), where the plaintiff was in possession and full control, the Court said, at page 564: "Of course if there has been misrepresentation or a concealment of defects not obvious to inspection, a different rule will apply. If the landlord has information of a defect likely to cause injury and such defect is one the tenant cannot discover by reasonable inspection, the former is bound to disclose it." In this case, the plaintiff was in full possession and control of the premises, so certainly the control of the area is immaterial.

The court below reasoned that the appellants were liable for their negligence as builders, if not as landlords, and said, "It is well established that a contractor who negligently erects a building for an owner is liable for bodily harm caused to them by the dangerous condition, even after the building has been accepted by the owner. Krisovich v. John Booth, Inc., 181 Pa. Superior Ct. 5 (1956). Assuming then that the defendants were only the builders, they obviously would be liable to the minor plaintiff. In our opinion, the fact that defendants were also the landlords under a lease containing an exculpatory clause would not relieve them from liability as builders. The exculpatory provision in the lease must be construed strongly against the defendants. This provision purports to release them from liability as landlords. It does not release them from liability for their acts as builders. Defendants acted in a dual capacity, as contractors and as landlords. This fact should not give them rights

higher than any other contractor. In the absence of a release of their liability as contractors, they remain liable as contractors for their negligent acts committed as such."

We do not believe that it is necessary, in this case, to go beyond the relationship of lessor and lessee, and that the court below was justified in denying the motion for judgment non obstante veredicto on the ground that the exculpatory clause did not take this case out of the rule set forth in the Restatement of the Law, Torts, Section 358, as approved in *Harris v. Lewistown Tr. Co.*, supra. True, the fact that the landlord was the builder, clothed him with peculiar and intimate knowledge of the method of construction. And even admitting that he thought his method of construction was a safe one, the jury didn't think so and it was certainly a condition not known to the appellees, and one that certainly proved to be unsafe, when a 3-year old child standing on a chair, reaching for a toy, could bring it tumbling down.

Judgment affirmed.