## Saewitz v. Levittown Shopping Center, Inc.

*Donald W. Vanartsdalen*, for plaintiffs.
*Frederick E. Smith*, for defendants.

SATTERTHWAITE, P. J., March 29, 1963.—The tenant-occupants of a ground-floor store and basement unit in defendant's shopping center building have brought this action of trespass to recover compensation for goods stored in the basement which were damaged by water flowing therein from the bursting of a water pipe due to freezing on January 6, or 7, 1959. The theory of plaintiffs' case is that the pipe, which was concealed in the ceiling of the basement, and was used solely to furnish water to an exterior tap for outdoor purposes of defendant alone in connection with its buildings and grounds, and of which plaintiffs had no knowledge, use or control, was permitted to freeze and burst through

the fault of defendant. The several grounds of negligence relied upon in this connection are that defendant failed to (1) turn off the water in the pipe during freezing temperature conditions, (2) insulate the pipe, (3) maintain the pipe "in the said ceiling in a safe condition," (4) authorize the tenant to gain access to said pipe, (5) inform plaintiffs "of the faulty construction" thereof at the time of the execution of their lease, and (6) disclose to plaintiffs "the dangerous condition of said water pipe." The complaint fails to elaborate on or particularize the quoted allegations of faulty construction and unsafe and dangerous condition of the pipe.

The matter is presently before the court on defendant's preliminary objections in the nature of a demurrer, contending that plaintiffs are barred from recovery as a matter of law by reason of an exculpatory clause in their lease attached by stipulation as an exhibit to the amended complaint.

The lease, dated August 27, 1954, demised to plaintiffs the subject portions of defendant's building for a term of 10 years from the date of delivery of actual possession thereof to plaintiffs. The document is lengthy and detailed in form and content. Clause numbered 17 thereof provides, in part, as follows:

"Tenant agrees to be responsible for and to relieve and hereby relieves the Landlord from all liability by reason of any injury or damage to any person or property in the demised premises, whether belonging to the tenant or any other person, caused by any breakage or leakage in any part or portion of the demised premises, or any part or portion of the building of which the demised premises is a part, or from water, rain or snow, that may leak into, issue or flow from any part of the said premises, or of the building of which the demised premises is a part, from the drains, pipes, or plumbing work of the same, or from any place what-

soever, whether such breakage, leakage, injury or damage be caused by or result from the negligence of Landlord, its servants or agents, or any other person or persons whatsoever."

The sole problem for present determination is the construction of this language to ascertain whether or not the parties intended the waiver of liability therein expressed to apply to a situation such as herein alleged. If they did, in the absence of overriding considerations of public policy which are not here presented: Boyd v. Smith, 372 Pa. 306; Restatement, Contracts §575; then the same must be given effect just as any other of the presumably negotiated terms of the contract: Cannon v. Bresch, 307 Pa. 31; Jacob Siegel Company v. Philadelphia Record Company, 348 Pa. 245; Manius v. Housing Authority of the City of Pittsburgh, 350 Pa. 512; Bogutz v. Margolin, 392 Pa. 151; Bryans v. Gallagher, 407 Pa. 142; Wright v. Sterling Land Company, Inc., 157 Pa. Superior Ct. 625; compare Daniels v. Bethlehem Mines Corporation, 391 Pa. 195.

The considerations involved in determining whether or not the lease provision in question would justify this result are set forth in Bogutz v. Margolin, supra, 392 Pa. at 154:

"In interpreting this clause of the lease certain principles of law must be kept in mind: (1) the waiver by a tenant of his landlord's responsibility for losses resulting from negligence must be plainly expressed [citing cases]; (2) to ascertain what the parties intended in a written agreement recourse must be had to the terms of the writing itself and such terms, in the absence of any ambiguity, furnish the true guide to the parties' intent [citing a case]; (3) any doubt which arises as to the meaning of the clause must be resolved in favor of the lessees and against the lessors [citing cases]."

Thus, in application of these limiting principles of strict construction, it was held in Baldwin v. McEldowney, 324 Pa. 399, that a clause releasing the landlord from liability "from any cause whatever which may arise from the use or condition of said premises . . . during said term" would not preclude recovery by reason of a dangerous fire escape the condition of which was known to the landlord at the time the lease was entered into and no warning whereof was given. The court reasoned that if the parties had contemplated and intended to release the landlord from the consequences of a pre-existing condition, more specific language would have been used to set forth such understanding. In Strothman v. Houggy, 186 Pa. Superior Ct. 638, a similar clause was involved and a like result was reached. Again, in Darrow v. Keystone, 5, 10, 25, $1.00 Stores, Inc., 365 Pa. 123, the tenant was held not to have been barred from recovery for loss arising from the landlord's negligence resulting in a fire, despite a clause in the lease whereby the tenant agreed "to assume all liability of accident or damage due to said occupancy"; the court held that this provision was not broad enough to include the landlord's negligence, and that the exculpatory language applied only to damage due to the tenant's occupancy, which obviously was not in itself the legal cause of the loss in suit. See also Schneider v. Chalfonte Builders, Inc., 11 Bucks 122, 138-139.

We believe that the instant case, in the present posture thereof at least, falls within the rationale of the Baldwin and Strothman cases. The complaint under consideration contains averments of negligence on the part of defendant, not only with respect to its contemporary failure to prevent the water pipe from freezing, but also in relation to its alleged lack of due care antedating the lease. The sufficiency of the latter to constitute actionable negligence may be open to

possible differences of opinion. We need not, and do not, resolve this problem at this stage of the case; the question certainly cannot be decided in defendant's favor as clear and free from doubt, and has not been argued. In any event, defendant does not presently rely on any contention of insufficiency of plaintiffs' pleading in this respect; its demurrer is confined entirely to the effect of the lease language above-quoted. Accordingly, and on the assumption that plaintiffs have otherwise stated a case showing legal damage resulting from a defective condition of the premises known to and negligently undisclosed by the defendant at and prior to the execution of the lease, we are not convinced that the parties intended the waiver to be applicable to bar recovery thereon. None of the cases above-cited or referred to at argument, except Baldwin and Strothman, involved the retroactive effect of such a release as to the consequences of the landlord's prior negligence arising before the very inception of the landlord-tenant relationship; only the future and continuing incidents of the status thereby created would normally and ostensibly be considered to have been contemplated, negotiated and agreed upon by the final lease contract. While the instant clause is not expressly restricted to matters arising during the lease term, as in the Baldwin and Strothman cases, nevertheless we believe, as therein observed, that had the parties really intended the waiver to pertain to matters subsisting before the tenancy commenced, it would very simply have been within their province so to state; in the absence of such expression, we will not presume that was their intention.

### Order

And now, this March 29, 1963, for the reasons stated in the foregoing opinion, defendant's preliminary objection in the nature of a demurrer to plaintiffs' amended complaint is hereby denied and overruled,

with leave to defendant to file an answer within 20 days from this date.