Employers Liability Assurance Corporation, Ltd.,
Appellant, *v.* Greenville Business Men's
Association.

Argued September 28, 1966. Before BELL, C. J.,
MUSMANNO, JONES, COHEN, EAGEN, O'BRIEN and ROB-
ERTS, JJ.

*Albert E. Acker,* with him *Cusick, Madden, Joyce, Acker and McKay,* for appellant.

*Geo. Hardy Rowley,* with him *Voorhies, Dilley, Keck & Rowley,* for appellee.

OPINION BY MR. JUSTICE JONES, November 22, 1966:

This is an appeal from the entry by the Court of Common Pleas of Mercer County of a judgment of non-suit in a trespass action.

On December 28, 1962, Greenville Business Men's Association (Association) was the owner of a building known as Building 4 located in the Reynolds Development, Pymatuning Township, Mercer County. Section 4 of that building had been under lease for several years to McGinnis Brothers, Inc., manufacturers of outdoor street Christmas decorations.

On December 28, 1962, under a written lease, the Association leased on a month to month basis beginning January 1, 1963, Section 3 of its building—which adjoined Section 4—to Blazon, Inc. (Blazon), for industrial uses, "including warehousing packaging and shipping" and, in accordance with the terms of the lease, Blazon entered into possession of Section 3.

An automatic fire sprinkler system ran through both Sections 3 and 4 of the building. On February 12, 1963, that portion of the sprinkler system located in

Section 4 "became activated without fire and caused flooding" in Section 4 which "resulted in water flooding under the door, into the building occupied by [Blazon], depositing about five (5) inches of water in said building" and causing water damage to Blazon's merchandise stored therein.[1]

As stated in the opinion of the court below the "sprinkler system failed when a joint broke due to the failure of [the Association] to prevent moisture from forming in the system and the pipes being at such a level that when [the Association] failed to supply heat to the building leased [Section 4], the joint broke and water which supplied the 'dry' water sprinkler system fell onto the floor of the adjoining section [Section 3]" causing damage to Blazon's goods.

For several years prior to February 2, 1963 and on that date, Employers Liability Assurance Corporation, Ltd. (Employers), insured Blazon against loss or damage to Blazon's property caused by water. After Blazon's property had been damaged, Employers paid Blazon $14,852.20 for its damages and received an assignment from Blazon of any rights which Blazon had against the Association to recover for the damages incurred.

By complaint filed, Employers instituted a trespass action against the Association in the Court of Common Pleas of Mercer County.[2] The Association filed an answer to the complaint in which, after averring that the sprinkler system was under the control not only of the Association but also of all its tenants, including Blazon, it averred that Blazon, by execution of the lease, had released the Association from all liability to its property arising from any negligence of the Association. By way of reply, Blazon averred that the lease was not in

[1] From the complaint (Paragraphs 8, 9 and 10).

[2] The Association-Blazon lease was attached to and made a part of the complaint.

effect when the damage occurred, that its possession was without benefit of the written lease and that the release contained in the written lease did not apply to the damages suffered and, in the alternative, even if the written lease was in effect, the Association was still liable because it failed to disclose to Blazon a malfunction which had existed in its sprinkler system prior to the execution of the lease, a condition which it knew or should have known.

The matter came on for trial before a court and a jury and, at the conclusion of Employer's case, the court entered a compulsory nonsuit. Later, the court refused to remove the nonsuit and judgment was entered in favor of the Association and against Employers. The propriety of such action is presented on this appeal.

Resolution of the issue before us depends upon the applicability and construction of an exculpatory clause —typewritten into the *printed* lease between the parties—which provided: "[The Association] shall not be responsible and [Blazon] agrees, for any damages occurring to the property of [Blazon]." The Association contends—and the court below agreed—that this provision of the lease precluded any liability for negligent conduct by the Association to Blazon, or its assignee, Employers.

This clause purports to render the Association immune from liability for "any damages occurring to the property of [Blazon]." Generally speaking, an exculpatory clause is valid if: (a) "it does not contravene any policy of the law, that is, if it is not a matter of interest to the public or State . . . ." (*Dilks v. Flohr Chevrolet*, 411 Pa. 425, 434, 192 A. 2d 682 (1963) and authorities therein cited) ; (b) "the contract is between persons relating entirely to their own private affairs" (*Dilks v. Flohr Chevrolet,* supra, page 433) ; (c) "each party is a free bargaining agent" and the clause is

not in effect "a mere contract of adhesion, whereby [one party] simply adheres to a document which he is powerless to alter, having no alternative other than to reject the transaction entirely." (*Galligan v. Arovitch*, 421 Pa. 301, 304, 219 A. 2d 463 (1966)).[3]

Assuming, *arguendo*, that the instant exculpatory clause satisfies all three conditions and is valid, our case law requires that, even if valid, an exculpatory clause must meet certain standards. "Despite the general *validity* of exculpatory provisions, certain standards have been established which must be met before an exculpatory provision will be interpreted and construed to relieve a person of liability for his own or his servants' acts of negligence.": *Dilks v. Flohr Chevrolet*, supra, p. 434.

Such standards are: (1) contracts providing for immunity from liability for negligence must be construed strictly since they are not favorites of the law (*Galligan v. Arovitch*, supra, p. 303; *Crew v. Bradstreet Co.*, 134 Pa. 161, 169, 19 A. 500 (1890)); (2) such contracts "must spell out the intention of the parties with the greatest of particularity" (*Morton v. Ambridge Borough*, 375 Pa. 630, 635, 101 A. 2d 661 (1954)) and show the intent to release from liability "beyond doubt by express *stipulation*" and "[n]o inference from words of general import can establish it" (*Perry v. Payne*, 217 Pa. 252, 262, 66 A. 553 (1907)); (3) such contracts must be construed with every intendment against the party who seeks the immunity from liability (*Crew v. Bradstreet*, supra, p. 169); (4) the burden to establish immunity from liability is upon the party who as-

---

[3] In *Galligan v. Arovitch*, supra, the one party was seeking a tenancy in an apartment house and the other party was the apartment house owner. The parties in this case bargained for a commercial lease where the relative bargaining position of the parties is much stronger than in the factual situation presented in *Galligan v. Arovitch*.

serts such immunity (*Dilks v. Flohr Chevrolet,* supra, p. 436).

Employer's basic contention is that the exculpatory clause in this lease "does not have the effect of exculpating [the Association] from liability . . ., principally because the condition which it contends constitutes the negligence, viz., the failure to keep the water pipes at the proper level, or to keep the building heated so that the water in the low places in the pipes would not freeze, *occurred prior to the entering into of the lease.*" (Emphasis supplied).[4]

In *Baldwin v. McEldowney,* 324 Pa. 399, 404, 188 A. 154 (1936) and *Strothman v. Houggy,* 186 Pa. Superior Ct. 638, 142 A. 2d 769 (1958), the respective Courts held that the exculpatory clauses in the leases which they were then construing had no retrospective effect and did not relieve from liability for negligent conduct which took place prior to the execution of the lease. However, in both *Baldwin* and *Strothman,* the immunity from liability provided therein expressly referred to negligent conduct which arose *during the term* of the several leases; for that reason neither *Baldwin* nor *Strothman* is directly apposite to the case at bar.

*Saewitz v. Levittown Shopping Center, Inc.,* 34 Pa. D. & C. 2d 499 (1963) presents a much more apposite situation. There, it was averred that the damage to Saewitz' goods had occurred by reason of the bursting of a water pipe and that the lessor had failed to disclose the dangerous condition of this pipe of which it had knowledge in the period antedating the lease be-

---

[4] From the opinion of the court below. The record shows that thirteen months prior to the break in the pipe which caused the instant damage, a break of a similar type had occurred at exactly the same place and that this break had been repaired at that time by the Association. It is averred and argued that such prior incident brought knowledge, or reason for knowledge, to the Association of the malfunction of the sprinkler system at that location.

tween the parties. The lessor relied upon an exculpatory clause in the lease.[5] Judge SATTERTHWAITE, in a well-considered opinion, stated: "Accordingly, and on the assumption that plaintiffs have otherwise stated a case showing legal damage resulting from a defective condition of the premises known to and negligently undisclosed by the defendant at and prior to the execution of the lease, we are not convinced that the parties intended the waiver to be applicable to bar recovery thereon. None of the cases above-cited or referred to at argument, except Baldwin and Strothman, involved the retroactive effect of such a release as to the consequences of the landlord's prior negligence arising before the very inception of the landlord-tenant relationship; only the future and continuing incidents of the status thereby created would normally and ostensibly be considered to have been contemplated, negotiated and agreed upon by the final lease contract. While the instant clause is not expressly restricted to matters arising during the lease term, as in the Baldwin and Strothman cases, nevertheless, we believe, as therein observed, that had the parties really intended the waiver to pertain to matters subsisting before the tenancy commenced, it would very simply have been with-

[5] This clause provided: "Tenant agrees to be responsible for and to relieve and hereby relieves the Landlord from all liability by reason of any injury or damage to any person or property in the demised premises, whether belonging to the tenant or any other person, caused by any breakage or leakage in any part or portion of the demised premises, or any part or portion of the building of which the demised premises is a part, or from water, rain or snow, that may leak into, issue or flow from any part of the said premises, or of the building of which the demised premises is a part, from the drains, pipes or plumbing work of the same, or from any place whatsoever, whether such breakage, leakage, injury or damage be caused by or result from the negligence of Landlord, its servants or agents, or any other person or persons whatsoever."

in their province so to state; in the absence of such expression, we will not presume that was their intention." (at p. 503).

If a clause in a written agreement purporting to extend immunity from liability for negligent conduct is to embrace negligent conduct occurring *before* as well as *after* the execution of the agreement, the intent of the parties to that effect must be expressed with the utmost clarity and without any ambiguity. Not only our case law but common sense dictates such requirement. When parties enter into a lease agreement they are contemplating a status which will be created in the future; their engagements undertaken are to be performed in the future, not the past. If a party seeking immunity from liability for negligent conduct intends exculpation for past as well as future negligent conduct it is his obligation to express in the agreement such intent in an unequivocal manner; absent a clear expression of intent, the clause of exculpation will not be so construed. It was the burden of the Association in this case to establish such intent and that burden has not been sustained. A construction of the exculpatory clause in this lease, in conformity with the standards enunciated in our case law, compels the conclusion that this clause was intended to operate prospectively, not retrospectively.

The court below relied, in large measure, upon *Bogutz v. Margolin,* 392 Pa. 151, 154, 139 A. 2d 649 (1958). In *Bogutz,* a majority of this Court held that the tenant therein had expressly waived liability on the part of the landlord for negligence occurring in that portion of the premises whereon the accident occurred. In *Bogutz,* no question of liability under the exculpatory clause for negligence which occurred prior to the execution of the lease was raised or considered. *Bogutz* is presently inapposite.

The court below should not have entered a compulsory nonsuit.

Judgment reversed. New trial granted.

———

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

Typewritten onto the printed lease between the lessor and lessee in this case was the following language: "[The lessor] shall not be responsible and [the lessee] agrees, for any damages occurring to the property of [lessee]." I fail to understand how any construction, no matter how strict, can hold these clear words not to encompass any damage resulting to the lessee's property on the premises from the landlord's negligence. The fact that the quoted language speaks only of damage and contains absolutely no reference to the factors causing the damage, to my mind, precludes us from *construing* these words not to apply to damage caused by negligence of the lessor antecedent to the signing of the lease. Were we here dealing with a contract of adhesion, it might well be that we should hold this exculpatory portion of the lease to be of no effect. In that event, however, we would not be construing the provision, we would simply be holding it invalid.*

That we are not confronted by a contract of adhesion is, I believe, amply supported by the opinion of the majority itself. Both lessor and lessee were business entities and the typwriting of the exculpatory provision appears to demonstrate that it was or should have been brought to the attention of the lessee and that hence, in contemplation of law, it was bargained for.

————

* A discussion of the difficulties encountered in construing leases of the type involved in this case may be found in 28 U. Pitt. L. Rev. 85 (1966).

Finally, I find no warrant in the majority's conclusion that parties to a lease containing an exculpatory clause of the type in question here would normally consider it to refer only to damage caused by negligence occurring after the signing of the lease. As far as I can tell, the only basis for such a conclusion as to this language is the mere speculation of the majority as to what was occurring in the parties' minds when the lease was signed. Such speculation, I submit, is not a sufficient foundation for establishing the legal intent of the parties. Therefore I see no reason for the majority's requirement of the insertion of language specifically referring to antecedent negligence of the lessor in order to give the exculpatory clause effect in this case.

For these reasons I dissent.

Mr. Chief Justice BELL joins in this dissenting opinion.