## King v. United States Steel Corporation, Appellant.

Argued April 30, 1968. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Henry T. Reath,* with him *David C. Toomey, George T. Kelton,* and *Duane, Morris & Heckscher,* and *Begley, Carlin, Mandio, Kelton & Popkin,* for appellant.

*Arthur M. Eastburn, Jr.,* with him *John Leslie Kilcoyne,* and *Eastburn and Gray,* for appellees.

OPINION BY MR. JUSTICE JONES, November 12, 1968:

This is an appeal from the order of the Court of Common Pleas of Bucks County which sustained appellees' (King's) preliminary objections in the nature of a demurrer and entered an order striking appellant's (Steel's) defense that King had released it from liability for the damage alleged in the trespass complaint.

In this action, King seeks to recover damages in excess of $1.5 million for alleged injury to its growing crops allegedly caused by air pollution from Steel's Fairless Works in Falls Township, Bucks County.

The amended complaint reveals that King has been engaged in farming activities since 1943 on land leased from a third party, Warner Company. In 1953 Steel constructed a steel plant on property contiguous to the land leased by King. In 1955 King approached Steel to inquire about the possibility of leasing land adjacent to the steel mill which Steel was not using. Steel agreed to lease 650 acres at an annual rental of $1 per acre. The lease was renewed yearly with slight modifications until 1960. All six yearly leases contained the following exculpatory clause: "Tenant further agrees that Lessor [Steel] shall not be liable in law, equity or otherwise to Tenant [King] for any injury, damage, annoyance, disturbance or discomfort resulting from light, heat, noise, smoke, odors, fumes, gases, vibrations, concussions or other causes incident to the construction, maintenance or operation of any or all of the furnaces, foundries, machine shops, rolling mills, coke ovens, coal and coke by-products plants and manufactories of any and every kind and description on any part or all of the land presently occupied as or hereafter acquired for an addition to or replacement of the Fairless Works of Lessor."

King instituted a trespass suit against Steel in 1961 for alleged pollution damage to four of its crops during the years 1955 through 1960. King does not seek damages for crops planted on the lands leased from Steel which it admits are covered by the terms of the exculpatory clause but it does seek damages for alleged injury to crops planted on the lands leased from Warner Company which King alleges are not covered by the terms of the exculpatory clause. Steel raised the exculpatory clause as an affirmative defense in its answer to the amended complaint. King demurred to this defense and moved to have it stricken. The court granted the motion, holding that the exculpatory clause applied only to lands leased from Steel.

The opinion of the court below is unclear. After reciting the terms of the exculpatory clause, the court decided that the clause was ambiguous. The court then applied the standards for interpreting exculpatory clauses which this Court set forth in *Employers Liability Assurance Corp. v. Greenville Business Men's Assoc.*, 423 Pa. 288, 224 A. 2d 620 (1966)[1] and concluded, "Applying the enumerated tests, we have very little difficulty in finding that the party claiming immunity has failed to establish that the release was intended to apply to lands other than those leased by Steel to King. Therefore, we sustain the demurrer of the plaintiff on this score." Steel petitioned for a clarification of this opinion. In its supplemental order, the court now held that the release was not ambiguous and "clearly did not release the defendant from liability for damages allegedly caused to crops of the plaintiffs growing on lands of the plaintiffs that were not leased to the plaintiffs by the defendant."

In its first opinion, the court held that the exculpatory clause was ambiguous. If the clause was ambiguous, it should never have been stricken on demurrer.

---

[1] "(1) . . . contracts providing for immunity from liability for negligence must be construed strictly since they are not favorites of the law; (2) such contracts 'must spell out the intention of the parties with the greatest of particularity' and show the intent to release from liability 'beyond doubt by express stipulation' and '[n]o inference from words of general import can establish it'; (3) such contracts must be construed with every intendment against the party who seeks the immunity from liability; (4) the burden to establish immunity from liability is upon the party who asserts such immunity." 423 Pa. 288, 292-93, 224 A. 2d 620 (1966). See also *Galligan v. Arovitch*, 421 Pa. 301, 219 A. 2d 463 (1966); *Dilks v. Flohr Chevrolet*, 411 Pa. 425, 192 A. 2d 682 (1963); *Bogutz v. Margolin*, 392 Pa. 151, 139 A. 2d 649 (1958); *Morton v. Ambridge Borough*, 375 Pa. 630, 101 A. 2d 661 (1954); *Darrow v. Keystone 5, 10, 25, $1.00 Stores, Inc.*, 365 Pa. 123, 74 A. 2d 176 (1950); *Baldwin v. McEldowney*, 324 Pa. 399, 188 A. 154 (1936).

"The question raised by the demurrer is whether upon the facts averred in the pleading being attacked the law says with certainty that the claim or defense is no good, and if there is *any* doubt as to whether the demurrer should be sustained it should be resolved against the objecting party."[2] (emphasis added). Therefore, if the court concluded that the exculpatory clause was ambiguous, the issue should have gone to the jury. *Rupert v. Geary*, 53 Del. R. 229, 230 (1965). Instead, the court applied the standards set forth in *Greenville Business Men's Assoc.*, which indicates that the law carefully scrutinizes exculpatory clauses and that the party claiming protection from the clause has a difficult hurdle to overcome. However, *Greenville* is not presently apposite. Procedurally, *Greenville* came to this Court on a nonsuit after a trial had been held and nowhere in that opinion did we state that judges should apply these standards to ambiguous exculpatory clauses when they are attacked by demurrer before the parties have had an opportunity to present evidence.

Finally, in its supplemental order, the court decided that the exculpatory clause was not ambiguous. We cannot agree with this conclusion. It is not clear what the parties intended when they used the words "lessor shall not be liable . . . for any injury." Steel should at least be given the opportunity to present evidence, if it can, that the parties intended this to cover injuries to crops grown on the lands leased from Warner.

There is no harm done by postponing consideration of this issue. The trial judge is free later to instruct

---

[2] 4 Stand. Pa. Pract. ch. 13, §25, pp. 36-37 (1955). See also: *Toms v. Bev-Maid, Inc.*, 420 Pa. 562, 218 A. 2d 300 (1966); *Sun Ray Drug Co. v. Lawler*, 366 Pa. 571, 79 A. 2d 262 (1951); *Moran v. Bair*, 304 Pa. 471, 156 A. 81 (1931); *Davis v. Investment Land Co.*, 296 Pa. 449, 146 A. 119 (1929).

the jury as to the weight to be given the exculpatory clause or to direct a verdict on the issue. Furthermore, much is at stake in this case. King is claiming damages in excess of $1.5 million and the effect of the exculpatory clause is a critical issue in the case. Such a critical issue should not be stricken on a demurrer unless there is no chance at all that Steel can produce evidence to substantiate its contentions. At this stage in the proceedings, we are unable to state categorically that Steel will be unable to produce such evidence. Finally, little time will be saved in granting the demurrer since the parties must still go to trial on the negligence counts. It is true that a major issue would be removed from the trial. The exculpatory clause, however, is a reasonably simple and distinct issue; there is no reason to believe that it will unduly confuse the jury. It is also not the type of issue which is likely to prejudice the jury if they are permitted to hear evidence. This is not an exculpatory clause contained in a form lease imposed upon a tenant who has no say in the matter. The possible inconvenience at trial of introducing the exculpatory clause does not outweigh the possible harm to Steel if it is not permitted to present evidence to substantiate what might be a valid defense.

Order reversed. Costs to abide the event.

Mr. Justice ROBERTS concurs in the result.

Mr. Justice COHEN dissents.

Mr. Justice MUSMANNO took no part in the consideration or decision of this case.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

I agree with the lower Court that the written lease (1) is clear and unambiguous and (2) only releases United States Steel Corporation from claims by *Tenant* for any injury, damage, etc., caused by or resulting

from any of its plants "on any part or all of the land [which Steel] presently occupied as or hereafter acquired for an addition to or replacement of the Fairless Works of lessor." Since the lease provides that lessor "shall not be liable in law, equity or otherwise to *Tenant* for any injury . . .," it is a limited and not a general release of Steel.