PANAGOS v. FOX.

1. LANDLORD AND TENANT—STORE BUILDING—REPAIRS—NOTICE.
   Under a lease containing a covenant on the part of the lessor to repair the roof and outside walls of building used only for restaurant, barbecue and dairy bar purposes, the presence of water on the floor along an outside wall called for repair by lessor where reasonable and repeated notice to do so had been given.

2. SAME—CONSTRUCTIVE EVICTION—INSTRUCTIONS—ABANDONMENT BY
   TENANT.

   Instruction in store building lessee's action against lessor to re-
   cover deposit of security for rent and for cost of constructing
   a partition that constructive eviction was any disturbance of
   tenant's possession by landlord whereby premises were rendered
   unfit for occupancy for purposes for which demised or tenant
   is deprived of beneficial enjoyment thereof or is caused to
   abandon the premises within a reasonable time was proper
   where abandonment was effected in fifth month of 10-year
   lease.

3. SAME—CONSTRUCTIVE EVICTION—QUESTION OF FACT—FAILURE TO
   REPAIR.

   It was not error to deny lessor's motion for directed verdict in
   lessee's action to recover rent security deposit and cost of con-
   structing partition where there was a question of fact as to
   whether or not landlord's failure to repair after reasonable
   and repeated notice to do so resulted in a constructive eviction.

4. SAME—CONSTRUCTIVE EVICTION—EVIDENCE.

   Verdict for tenant in his action against landlord for rent security
   deposit and cost of partition in store building because of aban-
   donment due to alleged constructive eviction in fifth month of
   10-year lease was supported by the testimony and was not
   against the great weight of the evidence.

Appeal from Wayne; Moll (Lester S.), J.    Sub-
mitted October 4, 1944. (Docket No. 45, Calendar
No. 42,802.)   Decided November 30, 1944.

Action by John Panagos, also known as John Pan-
agopoulos, against William Fox, individually and
doing business as United States (U. S.) Discount
Company, and Mildred Fox for damages suffered as
result of constructive eviction from leased property.
Verdict and judgment for plaintiff.    Defendant ap-
peals.   Affirmed.

*Basil D. Dritsas (Royal D. Rood, of counsel)*, for
plaintiff.

*Shapero & Shapero*, for defendant.

WIEST, J.     Defendants owned a vacant lot in the city of Detroit upon which plaintiff desired them to erect a one-story building and rent it to him for use in carrying on therein a restaurant, barbecue and dairy bar business.  Plans and specifications for the building were procured by defendants and submitted to and approved by plaintiff.  The four outer walls of the building were constructed with cement blocks. August 28, 1941, and before the building was completed, the parties entered into a 10-year written lease at a stated monthly rental.  The lease provided that the premises ''be used and occupied only for a restaurant, barbecue, and dairy bar, and any and all incidentals thereto.   *   *   *   The landlord upon reasonable notice agrees to keep in good order and repair the roof and four outer walls of the said premises, but not the windows, window glass, or outer doors or door glass.''   Plaintiff installed his equipment and about December 1, 1941, took possession of the premises.   At that time the newly-plastered walls had not fully dried but he was assured they would dry.   April 13, 1942, plaintiff vacated the premises and surrendered the keys, claiming failure of defendants, after request, to repair the outer walls, which admitted seepage of water and rendered the place untenantable and constituted a constructive eviction.

Plaintiff brought this action to recover $1,000, deposited with the lessors as security for payment of the rent, and $275, expended by him in constructing a division partition.   Upon trial by jury, plaintiff had verdict and judgment thereon for $1,150.   Defendant reviews by appeal.

There was testimony that moisture seeped through the eastern outer wall to the extent of wetting the inside plastered walls and running to the floor in the serving booths, requiring constant mop-

ping, and in the men's toilet, boards to walk on had to be placed on the floor.

Counsel for defendant ask:

"Where a new building is constructed according to plans and specifications agreed upon by the landlord and tenant, is there an implied covenant that the premises so constructed are fit for the tenant's purposes?"

The lease expressly provided that the premises "be used and occupied only for a restaurant, barbecue, and dairy bar, and any and all incidentals thereto," and this was followed by the covenant in the lease "that the tenant on payment of the rental at the time and in the manner aforesaid and performing of all of the foregoing covenants, shall and may peacefully and quietly have, hold and enjoy the demised premises for the term aforesaid."

Counsel for defendant also ask:

"Where a lease contains a covenant on the part of the lessor to repair, is the presence of water on the inside walls of the building, *in itself*, evidence of a state of disrepair of outer walls, requiring the landlord to take action?"

Supplemented by the testimony in the case, we answer, yes. There was a covenant in the lease to repair, upon reasonable notice, and there is testimony that such notice was repeatedly given and no repair made. It appears that at times rain or snow water, by reason of a pile of refuse close to the back door, came into the building over a door sill and entered the toilet room.

Counsel for defendant requested the court to instruct the jury that water entering over the door sill was not a violation of the covenant to repair the outer walls. The court did not give the specific request but in instructing the jury expressly limited

consideration to water seeping through the walls and on to the floors of the toilet room and restaurant.

The trial judge properly instructed the jury as to the elements of a constructive eviction. We quote:

"A constructive eviction may be defined as any disturbance of the tenant's possession by the landlord or by someone under his authority whereby the premises are rendered unfit for occupancy for the purposes for which they were demised, or the tenant is deprived of the beneficial enjoyment of the premises, if the tenant abandons the premises within a reasonable time.     *     *     *

"We are not concerned here with the performance of the building contract. We are concerned with the condition of the premises during the period that they were occupied by the plaintiff, that is to say, between the first day of December, 1941, and the 13th day of April, 1942. What was the condition? It is a question of fact. Was that condition the result of a lack of repair of the roof or outer walls of the building? If so, was that called to the attention of the landlords? If so, did they fail upon reasonable notice to make repairs, reasonable repairs? But first of all you have got to determine what was the condition. Then determine the question of notice, that is, bringing it to the attention of the landlords; and then you must characterize the conduct of the landlords as to whether some act of theirs or failure to act such as the failure to make repairs constituted a disturbance of the tenant's possession of the property by the landlords, whereby the premises were rendered unfit for occupancy for the purposes for which they were let."

See 32 Am. Jur. p. 231, § 246.

The court was not in error in denying defendant's motion for a directed verdict.

An architect of 25 years' experience, called as a witness by defendants, obtained the plans and speci-

fications for the building from the department of buildings and safety engineering of the city of Detroit and compared them with the building as constructed and found no flaws. But on cross-examination he testified:

"The construction of the east wall of this building consists of cement blocks, eight inches thick, and on the plan is marked the exterior walls to be plastered over, dampproof masonry; that is, plastered inside, after having first been dampproofed with tar, pitch or some material like that. I couldn't say how thick the plaster is. The outside wall has not been plastered or tarred, that is just cement blocks, exposed."

The testimony supported the verdict and we cannot find the verdict against the great weight of the evidence.

The judgment is affirmed, with costs to plaintiff.

NORTH, C. J., and STARR, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred. BUTZEL, J., did not sit.