### Swern & Company *v.* Morrisville Shopping Center, Inc., Appellant.

Argued January 12, 1968. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*Lester J. Schaffer,* with him *George F. Shinehouse, Jr.,* and *Zink, Shinehouse & Holmes,* for appellant.

*James M. Carter,* with him *Goodis, Greenfield, Narin & Mann,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, March 15, 1968:

This is an appeal from the judgment of the Court of Common Pleas No. 6 of Philadelphia County on a verdict for the plaintiff in the amount of $9,317.91 plus interest resulting from a trial without a jury before Judge ULLMAN in an action of assumpsit.[1] The principal sum represents the cost of expenditures by appellee upon an air-conditioning system located on premises leased by appellant to appellee.

On July 25, 1957, appellee, Swern & Co., entered into a written twenty-five year lease with appellant, Morrisville Shopping Center, Inc., for a store building owned by Morrisville. When appellee leased the store, it contained a central air-conditioning system which had been installed by appellant at the time the building was constructed in 1951. This system was part of the original plans and specifications for the building. In May, 1958, the air-conditioning system became

---

[1] There is no question that the jurisdictional amount of $10,000 has been met. Interest due at the time of trial is properly considered in reaching the jurisdictional amount. *Cara v. Newark Fire Ins. Co.,* 309 Pa. 71, 163 A. 289 (1932).

partially inoperative and required extensive repairs. The principal difficulty was that one of the sixty-ton refrigerant compressors had suffered severe internal damage and was inoperative. Appellee-lessee notified appellant-lessor of the problem. Appellee took the position that the required repairs were of a structural nature for which the lessor was responsible under the lease. Appellant disagreed, and the question of the responsibility for any repairs became one of the issues of this case.

According to appellee's expert air-conditioning engineer, to whose testimony the trial judge attached great weight, the air-conditioning system had become partially inoperative because liquid refrigerant found its way into the compressor and caused serious internal damage. Such compressors are designed to operate only upon refrigerant in a gaseous state. This was not a malfunction of the compressor itself, but was caused by the installation circuitry of the piping connecting the major components of the system. The arrangement of the piping and components was faulty and created the conditions whereby liquid refrigerant would be returned to the compressors.

As a result of this defect, one compressor had to be replaced and a number of other changes allegedly had to be made to prevent a recurrence of the return of liquid refrigerant to the compressors. These other changes gave rise to the second main issue in this case —whether, assuming the duty of the landlord to repair, all of the expenditures labeled repairs by the appellee were really repairs or were improvements. Certain improvements were admittedly within the figure of $11,809 plus interest originally sued for, but appellee then limited its requested relief to the $9,317.91 plus interest which it claimed was the actual cost of making the air-conditioning system operative. Judg-

ment was rendered for the latter sum by the court below.

The first issue is who is responsible for the cost of repairs to this air-conditioning system. In the first place, the irrelevancy should be pointed out in appellant's argument that since the lessor was not obligated to furnish air-conditioning, it was thus not obligated to keep the system in repair. Appellee concedes that appellant has no duty to furnish air-conditioning, e.g., water, etc., but insists that there is a duty to keep the air-conditioning system in repair. Appellee quite properly bases its argument on the terms of the lease, a number of which are relevant to this point. Several discuss the obligations of the lessor: "14. Lessor agrees to make all structural repairs other than those herein required to be made by Lessee. . . . 15. All repairs on or about said building, except such as the Lessee has expressly assumed . . . shall be made by the Lessor at its own cost and expense. . . . 27. Lessor shall not be liable for any property damage sustained by Lessee or other occupants of the demised premises, caused by the defective condition of the demised premises, . . ., pipes, conduits and other appurtenances, or for any other ommissions, [sic] or passive acts of negligence. However, if any such condition, defect, or ommission [sic] shall exist, and Lessor shall fail, if obligated to do so, to cause said condition, defect or omission to be corrected or remedied within ten (10) days after written notice thereof from Lessee or within such other time as shall be required to correct or remedy the same, with the exercise of reasonable diligence, Lessee shall have the right to correct or remedy the condition, defect, or omission, deducting the cost thereof from the next rent installment."

As to the obligations of the lessee, Paragraph 15 of the lease says the following: "Lessee shall at all times,

at its own cost and expense, keep the interior of said building, including all window glass and plate glass, in good, safe, secure and sanitary condition and repair, except to the extent that any repairs thereto may be necessitated by faulty construction of said building, nor shall the Lessee be required to make any repairs of a structural nature unless such repairs of a structural nature are required because of the negligence of the Lessee."

From these paragraphs, it is clear that the lessor, in general, has the responsibility of paying for the costs of repairs of a structural nature. And any repairs necessitated by the faulty construction of the building would fall within this category. The air-conditioning system was built into the building when it was constructed in 1951. Appellee's expert testified that the breakdown of the compressor was caused "by the installation circuitry of the piping connecting and interconnecting the major components of the system." The fault, he said, lay in both "the manner in which it had been installed, and the arrangement in which it had been installed." Appellant would have us distinguish between faulty "design" and faulty "construction". Even by appellant's view, there was evidence—"the manner in which it had been installed"—from which the trial judge could find that the actual installation was improper. In any case, a far more reasonable interpretation of "faulty construction" or "structural defect" would include faulty design. The defect inheres in the structure, and results from the construction, whether it originated in the architect's blueprint or the builder's failure to follow that blueprint.

Once it is determined that the lessor is responsible for the cost of repairs, the question becomes the extent embraced by the word "repairs". Appellant urges that

appellee is entitled only to a poorly designed system that existed at the time the lease was signed. Appellee contends, on the other hand, that it is entitled to a system that runs not just for a few months, but for a normal life. The court below found that "proper repair of the system required the extensive measures resorted to by Swern." The court further found that the changes were necessary to insure against a recurrence of the same problem. Although there is a limit to what can be subsumed within the word "repair", it is no stretching of the word to include what was done here. The testimony of appellee's expert was that without the changes, the fatal flow of liquid refrigerant into the compressor would continue. Merely replacing the wrecked compressor would not repair the system, and thus would not fulfill appellant's duty under the lease.

Judgment affirmed