**Hayes v. Chido**

*Cyril I. Garvey,* for plaintiff.

*George H. Rowley,* for defendant.

*Donald R. McKay* and *P. Raymond Bartholomew,* for additional defendant.

ACKER, J., July 6, 1970.—This action in trespass is before this court for disposition of a demurrer and, in the alternative, a motion for more specific pleadings. A previous motion to strike on the basis of late joinder of the additional defendant was denied by order of this court of May 5, 1970.

By the complaint it is alleged that plaintiff, on November 25, 1967, was injured when a garage door of the Gulf Service Station, operated by defendant, fell upon plaintiff while he was driving his truck into the service station. It is claimed that he sustained severe and permanent injuries as a result.

Defendant, Chido, has joined the Gulf Oil Corporation as an additional defendant. This joinder was past the two-year statute of limitations and, therefore, is but for contribution or indemnification of any verdict returned against defendant, Chido. The negligence alleged of the additional defendant is threefold: (a) In leasing premises in a defective condition; (b) failing to advise plaintiff, defendant and others of the condition of the overhead door; (c) in failing to exercise reasonable care in the performance of its contractural obligation to repair the overhead door. That contractural obligation allegedly arises from an addendum to the lease, which reads:

"Until further notice to the contrary and in order to assist the dealer in the unkeep of his Station Leased from Gulf, Gulf will repair the surface of the driveways and structural defects in the building (not including glass)."

By brief and oral argument, the additional defendant responds that the alleged defect in the operating mechanism of the overhead door is not a "structural defect"; that the lessee contracted in the lease that he had examined the premises and is familiar with the conditions of the premises, buildings, equipment and fixtures and that they were received in good repair and condition. Even more, the additional defendant claims that defendant has specifically agreed to exonerate, save harmless and protect and indemnify the lessor from any and all losses, claims, damages, suits or actions, judgments and costs which may arise or grow out of any injury to, or death of, any person upon the property caused or in any manner connected with the use, possession, repair or condition of the said premises or any equipment or fixtures thereon. Defendant responds that such a clause is ineffectual because the intent to indemnify for negligent conduct, both before and after the entry into the lease, must be expressed with the utmost clarity and without any ambiguity. This it is claimed they failed to do. Further, defendant contends that by the language of the addendum assuming responsibility, Gulf, in effect, negated the hold harmless clause in the printed lease thereby preventing it from being viable. We agree with the position of defendant.

## THE DEMURRER

For the purpose of this demurrer, regardless of the viability of the indemnification clause, the additional defendant can be held liable for a latent defect. Paragraph 5 of the complaint to join additional defendant alleges that the defect in the operating mechanism of the garage door existed and was known to the additional defendant at the time that it entered into the lease with defendant. Paragraph 6(b) alleges that the additional defendant is liable in failing to advise plaintiff, defendant and others of the said overhead door. By the Restatement 2d, Torts, §358, liability is

placed upon a landlord out of possession who conceals or fails to disclose to his lessee any artificial condition involving unreasonable risk of bodily harm to any person upon the land with the consent of the lessee if (a) the lessee does not know of the condition or the risk involved therein; and (b) the lessor knows of the condition and realizes the risk involved therein and has reason to believe that the lessee will not discover the condition or realize the risk. This section of the restatement has been accepted with approval in Harris v. Lewistown Trust Company, 326 Pa. 145, 191 Atl. 34 (1937), and Strothman v. Houggy, 186 Pa. Superior Ct. 638, 142 A. 2d 769 (1958).

Further, there are many Pennsylvania cases holding liability for negligent construction of buildings or structures or conditions which exist at the time that the landlord entered into the lease as to third persons: Toth v. Philadelphia, 213 Pa. Superior Ct. 282, 247 A. 2d 629 (1968); Bruder v. Philadelphia, 302 Pa. 378, 153 Atl. 725 (1931); Harte v. Jones, 287 Pa. 37, 134 Atl. 467 (1926); Palmore v. Morris, Tasker & Co., 182 Pa. 82, 37 Atl. 995 (1897).

The complaint to join additional defendant does not specifically state that defendant did not have knowledge of the defective condition. It may be reasonably inferred so for the purpose of this demurrer. Even with such knowledge, liability has been held for areas of public invitation. In Folkman v. Lauer, 244 Pa. 605, 91 Atl. 218 (1914), a defendant who leased a baseball grandstand in a public park, and who knew some of the timbers were decayed, was held liable to persons who were injured due to a collapse of the grandstand even though the tenant by lease obligated himself to keep the premises in good repair.

In Strothman v. Houggy, supra, the contractor-owner was held responsible for a mantel which fell upon a child notwithstanding an exculpatory clause

which provided that the lessor-owner should not be liable for any injury to any person for any cause which might arise from use or condition of the building.

Defendant rests its liability upon Restatement, 2d, Torts, §§357 and 359, as well as §358. In section 357, as opposed to section 358, liability is based on a covenant in the lease to keep the land in repair which the landlord fails to do, thereby creating an unreasonable risk to persons upon the land. This section of the restatement has been accepted in Reitmeyer v. Sprecher, 431 Pa. 284, 243 A. 2d 395 (1968), as well as in many other cases.[1]

Liability could likewise be imposed under Restatement, 2d, Torts, 359, where a lessor who leased land for purposes which involve the admission of the public is subject to liability for physical harm to a person who enters the land for that purpose when he knows, or by the exercise of reasonable care could discover, the condition and has reason to expect that the lessee will admit such persons before the land is put in a safe condition for the reception and fails to exercise reasonable care to discover or remedy the condition. This section of the restatement has been accepted in Pennsylvania also.[2] It accepts the doctrine of Folkman v. Lauer, supra.

Is a defect in the operating mechanism of a garage door of a gasoline station within the meaning of a

---

[1] Deutsch v. Max, 318 Pa. 450, 178 Atl. 481 (1935); Harris v. Lewistown Trust Company, 326 Pa. 145, 191 Atl. 34 (1937); Presley v. Acme Markets, Inc., 213 Pa. Superior Ct. 265, 247 A.2d 478 (1968); Toth v. Philadelphia, 213 Pa. Superior Ct. 282, 247 Atl. 629 (1968).

[2] Maglin v. Peoples City Bank, 141 Pa. Superior Ct. 329, 14 A.2d 827 (1940), and Yarkosky v. The Caldwell Stores, Inc., 189 Pa. Superior Ct. 475, 151 A.2d 839 (1959).

"structural defect in the building"? Certainly the filling station proper was a structure.[3]

The additional defendant relies upon Swern & Company v. Morrisville Shopping Center, Inc., 429 Pa. 204, 239 A. 2d 302 (1968). This case arose from a suit on a lease for repairs to an air-conditioning unit in a shopping plaza. By the lease, the lessor agreed to make all structural repairs other than those required to be made by the lessee and the lessor was to be liable for any property damage caused by the defective condition of the demised premises. Further, the lessee was required, at his own expense, to keep the interior of the building in proper repair, ". . . except to the extent that any repairs thereto may be necessitated by faulty construction of said building, nor shall the lessee be required to make any repairs of a structural nature unless such repairs of a structural nature are required because of the negligence of the lessee."

Testimony of the tenant's expert, which was accepted by the lower court, was that the loss was occasioned by the breakdown of a compressor caused by the installation circuitry of the piping connecting and interconnecting the major components of the system. The fault was in the manner in which it had been installed and the arrangement in which it had been installed. The landlord desired the appellate court to distinguish between faulty design and faulty

---

[3] In re Hertrick Appeal, 391 Pa. 148, 137 A.2d 310 (1958). A gasoline service station was held to be a structure. This case involved a zoning ordinance which required property owners within 100 feet of the proposed structure to consent to the permission to build a gas station. There contention was that the tanks, pumps, and other facilities should be construed as structures thereby enlarging the area of required permission of property owners. This position was not accepted. In Humphreys v. Stuart Realty Corporation, 364 Pa. 616, 73 A.2d 407 (1950), gasoline storage tanks which were partially or entirely covered by earth were not regarded as structures in construing a zoning ordinance.

construction. The court held that a far more reasonable interpretation of faulty construction or structural defect would include faulty design.

Examining the pleadings in this case, it is contended by defendant in his complaint to join additional defendant that the defect in the operating mechanism of the said garage door caused the accident. By the World Book Dictionary, 1968, a defect is a fault, blemish, imperfection, lack of something essential to completeness, a falling short.

This court cannot say on a demurrer that the pleadings are insufficient to permit the matter to be heard by a jury as the additional defendant requests.[4]

Finally, the additional defendant requests a demurrer upon paragraph 7 of the lease. "Lessee agrees to exonerate, save harmless, protect and indemnify lessor from any and all losses, damages, claims, suits or actions, judgments or costs which may arise or grow out of any injury to or death of any person or persons or damage to any property caused by or in any manner connected with the use, possession, repair or condition of said premises or any equipment or fixtures thereon." The additional defendant desires this clause to be applicable to not only preexisting conditions which were not brought to the attention of the tenant, as well as structural conditions over which it has assumed responsibility.

Recently, our Supreme Court has construed such a clause in a series of cases in a most rigid and practical manner, commencing with Employers Liability Assurance Corporation, Ltd. v. Greenville Business Men's Association, 423 Pa. 288, 224 A.2d 620 (1966). There it was held that an exculpatory clause will be

---

[4] Defendant does not allege that the operating mechanism failed because it broke, was not properly maintained, etc. Rather, it alleged that it failed because of a defect.

valid only if: (a) It does not contravene any public policy of the law, that is, it is not a matter of interest to the public or State; (b) is between persons relating entirely to their own private affairs; (c) each party is a free bargaining agent and the clause is not, in effect, a mere contract of adhesion whereby one party simply adheres to a document which he is powerless to alter, having no alternative other than to reject the transaction entirely and it expresses beyond doubt by express stipulation and not by inference of general import that immunity is to exist. There, the printed lease, as in the instant case, provided that the lessee would not be responsible for any damages occurring to the property of the tenant. This was followed by King v. United States Steel Corporation, 432 Pa. 140, 247 A.2d 563 (1968), where Employers Liability, supra, was reaffirmed, but the exculpatory clause was returned to the lower court for a determination of its meaning.

The most recent decision is Kotwasinski v. Rasner, 436 Pa. 32, 258 A.2d 865 (1969), which reaffirmed Employers, supra.

To permit a landlord to agree to make repairs for structural defects and then to claim that it has an exculpatory clause relieving it from liability, even though it fails to perform its obligations, causes an unacceptable inconsistency and an injustice.

Wherefore, a preliminary objection in the nature of a demurrer is denied.

MOTION FOR A MORE SPECIFIC PLEADING

Although the additional defendant states two grounds for the motion, it pursues but one in oral argument and in its brief. The abandoned position is the failure to allege the date on which the lease was entered into. In that this lease was between defendant and additional defendant, certainly this is something within the knowledge of the additional defendant in

any event for which a preliminary objection could not be sustained.

The second objection is well taken. There, it is contended that the complaint to join does not specify the nature of the defective condition or the type of repair which was needed in connection with the overhead door. One starts with the proposition that, "The act or omission relied on as negligence must be alleged either in direct and positive terms, or by setting out facts from which the fact of negligence can fairly and legally be inferred": Arner v. Sokol, 373 Pa. 587, 96 A. 2d 854 (1953).

The additional defendant is entitled to know the nature of the defective condition allegedly causing the overhead door to fall.

In Hall v. Mednitsky, 51 Luz. 55 (1960), an averment that defendant failed to install and maintain a "proper and safe electrical wiring system was insufficient." In Pennsylvania Power and Light Company v. Scheib, 79 Dauph. 58 (1962), an averment that an automobile was in an unsafe condition at the time of the accident was insufficient. In Savage v. Angelo, 49 Lack. Jur. 4 (1948), a complaint for damages as a result of an explosion which alleged that defendants "carelessly, negligently and recklessly operated a heating stove within the building where the explosives were stored," stated a legal conclusion and was regarded as insufficient. In Sellers v. Sharon Chrysler, Plymouth, Inc. and Chrysler Motors Corporation, the Court of Common Pleas of Mercer County, June term, 1970, no. 99, through Stranahan, P. J., ruled that an allegation in a complaint in assumpsit that an automobile had a defect in it at the time of manufacture was not sufficiently specific.

Wherefore, the preliminary objection for a more specific pleading is sustained.

## ORDER

And now, July 6, 1970, the additional defendant's preliminary objection in the nature of a demurrer is overruled, but the preliminary objection in the nature of a rule for a more specific pleading is sustained. Defendant shall be given 20 days in which to plead the nature of the defective condition or the type of repair which was needed in connection with the overhead door which allegedly resulted in injury to plaintiff in this case.