ANCHOR INN OF MICHIGAN, INC. v KNOPMAN

1. LANDLORD AND TENANT—REPAIRS—RECOVERING COSTS.

A tenant whose landlord has convenanted to make repairs and fails to do so may, after giving reasonable notice to the landlord, make the repairs and recover the costs from the landlord or deduct the costs from the rent.

2. LANDLORD AND TENANT—DUTY TO REPAIR—ACTUAL KNOWLEDGE—RECEIPT OF NOTICE.

A landlord's duty to repair may arise from his actual knowledge of the need for repair unless such duty is expressly made conditional upon receipt of notice from the tenant.

3. LANDLORD AND TENANT—FINDINGS OF FACT—APPEAL AND ERROR—REVERSIBLE ERROR—NOTICE OF DEFECT—ACTUAL NOTICE.

An erroneous conclusion by a trial court that a defendant landlord in an action to enforce the repair provisions of a lease agreement had been notified on a specific date of the need for repair did not approach the level of reversible error where the evidence showed that the landlord had otherwise received notice and had knowledge of the need for repair.

Appeal from Wayne, Thomas J. Foley, J. Submitted June 7, 1976, at Detroit. (Docket No. 23089.) Decided September 7, 1976.

Complaint by Anchor Inn of Michigan, Inc., against Dave J. Knopman seeking to recover money paid to repair and replace an air conditioning unit on leased premises. Judgment for plaintiff. Defendant appeals. Affirmed.

*Seely, Boyer, Gilleo & Simon,* for plaintiff.

REFERENCE FOR POINTS IN HEADNOTES

[1–3] 49 Am Jur 2d, Landlord and Tenant § 841 *et seq.*

*Marvin A. Canvasser,* for defendant.

Before: J. H. GILLIS, P. J., and T. M. BURNS and W. VAN VALKENBURG,\* JJ.

T. M. BURNS, J. Plaintiff sued defendant to recover money it paid out to repair and replace an air conditioning unit located on premises plaintiff leased from defendant. After a trial before the court, judgment was entered in plaintiff's favor. Defendant filed a motion for a new trial which was denied. Defendant appeals as of right.

Plaintiff leased the building for use as a restaurant. The lease provided in part as follows:

"The Landlord will be responsible for maintaining the heating and air conditioning system, including the replacement thereof if necessary, except the Tenant will pay up to $200.00 in any one calendar year towards such maintenance."

Plaintiff commenced use of the air conditioning unit in the spring of 1972, but the unit did not properly cool the air. Numerous unsuccessful attempts to repair the cooling unit were made and a new unit was installed by the plaintiff. Plaintiff unsuccessfully sought reimbursement from defendant of the costs of repair and installation.

When it was first determined that the air conditioner was not functioning adequately, defendant was notified and he had a repairman work on the unit. Failing to solve the problem, the repairman stopped working on the unit, and defendant told plaintiff to get it fixed. J. K. Refrigeration was then engaged by plaintiff to repair the cooling

---

\* Former circuit judge, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

unit, but even after considerable work was done on the unit, it continued to malfunction.

Virginia Wargosie, the manager of the restaurant, contacted defendant by telephone many times concerning the cooling problems. She kept a diary of these calls. In May of 1972 defendant told her that he was not responsible for the air conditioner because plaintiff had broken the lease. When plaintiff hired J. K. Refrigeration to work on the unit defendant was again contacted. Wargosie asked if the arrangement with J. K. Refrigeration met with his approval. Defendant responded that it was fine with him and that they could get whomever they wanted.

While J. K. Refrigeration was working on the unit, defendant sent a repairman to check the system. The repairman contacted Wargosie and told her that the unit was inadequate and should be replaced. The owner of J. K. Refrigeration was contacted by defendant and was asked for an estimate for putting the system in perfect condition. Defendant was told that it couldn't be done.

Repair of the cooling unit was attempted by Radoe Heating and Cooling in 1973 at the request of the plaintiff. After repair was again found to be fruitless, Radoe was authorized by plaintiff to replace the system with a new unit.

On appeal defendant contends that under the lease agreement he promised only to repair or replace the system, not to reimburse plaintiff for repair or replacement performed by him. Defendant argues further that no breach of the lease was shown at trial since there was no credible proof that it was necessary to replace the air conditioner, that he did not receive sufficient notice of the need for replacement and, therefore, the tenant exceeded its authority in replacing the unit.

Where the landlord has covenanted to make repairs and fails to do so, the tenant, after giving reasonable notice to the landlord, may make the repairs and recover the cost of such repairs from the landlord or he may deduct the cost from the rent. See 51C CJS, Landlord and Tenant, § 369, p 972 and cases cited therein, *Borochoff Properties, Inc v Creative Printing Enterprises, Inc,* 233 Ga 279; 210 SE2d 809 (1974). Unless the landlord's duty to repair is expressly made conditional upon receipt of notice from the tenant,[1] such duty may arise from the landlord's actual knowledge of the need for repair. 49 Am Jur 2d, Landlord and Tenant, § 840, p 807, Anno, 28 ALR 1525. The landlord's duty to maintain in good repair an air conditioning unit on the leased premises extends to reimbursing the tenant for monies expended in replacing defective air conditioning apparatus. *Swern & Co v Morrisville Shopping Center, Inc,* 429 Pa 204; 239 A2d 302 (1968).

In the instant case, the trial court found that at the time the parties entered into the lease, the premises were in a general state of disrepair including the outmoded air conditioning unit. He found that the unit was not capable of cooling the premises sufficiently for use as a large restaurant. The trial court found that there was a valid agreement on defendant's part to maintain the air conditioning, and that defendant breached the agreement by failing to adequately repair the unit after receiving notice of the need for repair. The trial court also found that defendant had actual knowledge of the irreparable state of the unit and that replacement was necessary. The court ruled the plaintiff had not breached the lease agreement at any time.

---

[1] *See Panagos v Fox,* 310 Mich 157; 16 NW2d 700 (1944).

We find that the record supports the trial court's findings of facts, with one exception noted below. The air conditioning unit was in a state of disrepair and defendant had knowledge of the need for extensive repair or replacement and was given a reasonable opportunity to inspect and repair the unit. We also find from the record, particularly from the testimony of witnesses Fries and Keithley, that the amount of money expended by the plaintiff in effecting repair and replacement of the cooling system was reasonable.

Defendant asserts that the trial court erred in not granting a new trial. The basis of the motion was that the trial court had erroneously found as a matter of fact that John Keithley had told defendant that the cooling unit was in such poor shape that it had to be replaced. This finding made by the trial court was clearly erroneous. Mr. Keithley did not so testify. This erroneous finding supported the court's conclusion that defendant was in fact notified of the need for replacement.

Defendant would have us reverse the trial court on this error. We decline. The erroneous finding does not approach the level of reversible error.

Defendant breached his duty of repair. He received both notice and knowledge of the air conditioner's serious state of disrepair. He failed or refused to effect repair within a reasonable time. Plaintiff, after many attempts at repairing the unit, found it necessary to replace it. On these facts alone defendant's liability for the cost of replacement might properly rest. But there is also evidence that James Keithley reported to defendant that the unit's condenser was completely gone, that the compressors were not working properly and that the unit was leaking. Asked by defendant to put the unit in perfect condition, Keithley responded, "It couldn't be done".

The erroneous finding made by the trial court is without consequence.[2] The conclusions reached were otherwise supported by the evidence.

The other allegations of error are without merit.

Affirmed. Costs to plaintiff.

---

[2] *See People v Anderson,* 64 Mich App 218, 221; 235 NW2d 746 (1975).